**MARYLAND CASUALTY COMPANY,**
a corporation,

v.

**The UNITED STATES and Fidelity Trust Company, a corporation, Pittsburgh, Pennsylvania, Third-Party Defendant.**

**No. 252–55.**

United States Court of Claims.

June 5, 1956.

John J. Wilson, Washington, D. C., for plaintiff.

Walter Kiechel, Jr., and Kathryn H. Baldwin, with whom was Acting Asst. Atty. Gen. Geo. S. Leonard, for defendant.

Clyde P. Bailey, Pittsburgh, Pa., and D. C. Colladay, Washington, D. C., for Fidelity Trust Company. Weller, Wicks & Wallace, Pittsburgh, Pa., Edward F. Colladay and Colladay & Colladay, Washington, D. C., were on the briefs.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff, a bonding company, alleges in its petition that it furnished performance and payment bonds for a contractor with the Government; that the contractor executed an assignment, under the Assignment of Claims Act of 1940, 31 U.S.C.A. § 203, of its right to receive payments under the contract, to Fidelity Trust Company (hereinafter called Fidelity); that in the course of performance of the contract, the contractor failed to pay certain laborers and material men; that the plaintiff, pursuant to the obligation of its bond paid them, in the amount of $52,656.87; that there are still unpaid bills of this nature in the amount of approximately $83,000.

The plaintiff says that the contract has been completed and the Government has an unpaid balance in its hands of not less than $112,000 which it is preparing to disburse; that under the rule laid down in Royal Indemnity Co. v. United States, 93 F.Supp. 891, 117 Ct.Cl. 736, the plain-

tiff is entitled to recover from the Government the amount of its payments pursuant to its bonds; that its right is superior to that of Fidelity, the contractor's assignee; that the plaintiff is informed and believes that the Government is about to disburse to the Fidelity Trust Company the sum of $56,287.68 of the money still owing by the Government on the contract.

In its petition the plaintiff says that since Fidelity appears to have an interest in the subject matter of the suit, it should be notified to appear as a party and assert its interest therein, pursuant to 41 U.S.C.A. § 114 and rule 19 of this court, 28 U.S.C.A. Shortly after filing its petition the plaintiff filed a motion, pursuant to the statute and rule above cited, for the issuance of an appropriate notice to Fidelity. The court issued the notice.

The Government filed its answer on September 23, 1955. It admits that it had, on the date the plaintiff's petition was filed, a retained balance of $112,000 on the contract. But it says that on that day, which was June 27, 1955, its finance officer issued a check for $56,287.68 to Fidelity.

Fidelity, having obtained an extension of time in which to respond to the notice to appear, on October 24, 1955, filed a motion for the dismissal of the action as to it. The Government on November 21, and the plaintiff, on November 23, filed oppositions to this motion. On February 6, 1956, the court denied without prejudice Fidelity's motion to dismiss. The court was at that time in doubt as to whether Fidelity claimed to have further rights in the undisbursed funds, in addition to the $56,287.68 which it had been paid on June 27, 1955. On March 5, 1956, Fidelity filed a motion requesting the court to reconsider its action denying the motion to dismiss. The Government and the plaintiff filed oppositions to this motion.

On April 16, 1956, the Government, expressing doubt as to whether a mere notice to the third party, Fidelity, was sufficient to bring it effectively into the proceeding, filed a motion for leave to file, out of time, a motion that the court issue, pursuant to its rules 19(e) and (f), a summons to the third party. The Government says that it has a contingent claim against the third party in that if the court decides that the money which the Government paid to the third party should have been paid to the plaintiff, the Government will have a claim against the third party for the money.

On April 30, 1956, the third party, Fidelity, filed an opposition to the Government's motion for the issuance of a summons, and also filed a disclaimer of any interest in the money still in the hands of the Government.

The case now presents the question whether, in a case where the Government is sued by one person for money which the Government, at one time, admittedly had in its hands, but which it has disbursed to another person under a mistake of fact or law, the Government has the legal right to have that other person brought into the case so that if the plaintiff prevails against the Government, the Government may have a judgment against the other person to recover the money erroneously paid to it.

The third party says that such a procedure is not available to the Government in this case because the statute authorizing that procedure applies only to cases arising under the Contract Settlement Act of 1944, 58 Stat. 649 et seq., 41 U.S.C.A. § 101 et seq. This case obviously has no relation to that Act. Section 14 (b) of that Act, 41 U.S.C.A. § 114(b), says that this court may summon persons to appear as parties

"in any suit or proceeding of any nature whatsoever pending in said court to assert and defend their interests, if any, * * *."

Congress could not have chosen more comprehensive language to express the scope of the third party procedure which it was creating. The third party urges, however, that the setting of the language shows that the intent was not as comprehensive as the words.

Section 13(b) of the Contract Settlement Act, 41 U.S.C.A. § 113(b), provides that if a Government agency has not settled a war contractor's termination claim by agreement, the contractor may (1) appeal to the Appeal Board created by the Act or (2) sue the United States in this court or, in an appropriate case, in a United States District Court. Section 13(d) (2), 41 U.S.C.A. § 113(d) (2), provides for a suit in this court or a District Court after an adverse decision of the Appeal Board.

Then comes section 14 of the Act, 41 U.S.C.A. § 114, which in subsection (a) provides for the appointment by this court of additional auditors and commissioners. It appears from House Report on H. R. 3022, 78th Cong., 2d Sess., March 20, 1944, p. 14, that the bill as it read on that date provided that the duties of the additional commissioners were limited to duties in respect to contract termination claims. The statute as enacted, however, contains no such limitation. See House Report No. 1590, 78th Cong., 2d Sess., June 1, 1944, on S. 1718, the bill which became the Contract Settlement Act of 1944. In this instance Congress inserted in the Contract Settlement Act a provision which it deliberately concluded should not be limited in its application only to Contract Settlement Act litigation.

In the printed report of Hearings before a Subcommittee of the Committee on Military Affairs, United States Senate, 78th Cong., 2d Sess., on S. 1268, S. 1280 and S. 1479, it appears that the Attorney General had been asked to comment on the proposals which had been made to "streamline the Court of Claims". At pages 524 and 525 of the report is the reply of the Attorney General, dated January 11, 1944, and saying, in part:

"It is my view that the Court of Claims now has ample rule-making power and that there is sufficient flexibility in the practice to take care of most contingencies. I think, however, that it would be highly advantageous to enlarge the jurisdiction of the Court of Claims to enable it to entertain actions by the Government in the nature of bills of interpleader, and thus to bring before the court all parties to a particular controversy. At present one of several adverse claimants can sue in the Court of Claims without binding the other claimants by the decision unless they voluntarily appear. This promotes uneconomical, piecemeal litigation and subjects the United States to possible double liability. Moreover, for similar reasons, it would be in the interest of economy of time, effort, and money to make it possible for the Government to bring interested cross-defendants into the same action. This need for additional jurisdiction would become particularly acute if, as would be provided by some of the proposed bills, the Government should undertake to make direct payments to subcontractors of amounts includible in the settlement of the claims of prime contractors.

\* \* \* \* \* \*

" \* \* \* I think the Congress should consider the need for legislation sufficiently enlarging the jurisdiction of that Court to enable the Government to bring all interested parties before it, especially if certain of the proposals concerning the settlement of the claims of subcontractors should be adopted."

In another letter to the Chairman of the Subcommittee, dated April 19, 1944, which the Government printed in its brief in Hardin County Savings Bank v. United States, 102 Ct.Cl. 815, the Attorney General in commenting on the language of Subsection 14(b) of S. 1718, said in part

"The subsection in question would permit the Government to require any person having an interest in any claim asserted against the United States in the Court of Claims to elect either to become a party to the action or to abandon such interest. Also, under the subsection, any such

person could be made a party to the suit for the purpose of defending any claim of the United States against him for money already paid in respect of the transaction or matter in controversy and the Court would be authorized to pass upon the respective interests of adverse claimants and to award judgments accordingly. The court would thus be enabled to make the necessary adjustments as between all parties in interest without protracted and repetitious litigation.

\* \* \* \* \* \*

For these reasons it seems clear that the subsection will go far to expedite the disposition of the termination claims that are brought before the Court of Claims, and it will also make it possible for the Court to achieve just and final settlements between all parties in interest with substantial savings of manpower and money.

"I am glad to note that the application of the subsection has not been limited strictly to termination claims. Such limitation would be most unwise in view of the difficulties of prediction and the ingenuity displayed by attorneys in finding and creating forms of procedure in order to obtain the advantages of legislative limitations. Also, I think it unwise as a general rule to limit remedial legislation to particular situations where the need for its general application is as plain as it is here. Piecemeal legislation, designed to meet particular aspects of a problem, is often harmful in that it tends to postpone a comprehensive remedy. Moreover, the expedition of termination cases will not be dependent solely upon the proceedings therein. It is obvious that any measure which will aid the Court and counsel in the disposition of litigation generally will also have a highly advantageous effect upon the movement of a particular class of cases. This truth has been recog-

nized in Subsection (a) of the same section, which would permit the use of Commissioners appointed under the Act on cases other than termination cases.

"For these reasons I am heartily in favor of the enactment of Subsection (b) of Section 14 as now drafted, and I recommend that it be enacted without substantial change."

Section 14(b) of the Act, 41 U.S.C.A. § 114(b) is as follows:

"Procedure

"The Court of Claims, on motion of either of the parties, or on its own motion, may summon any and all persons with legal capacity to be sued to appear as a party or parties in any suit or proceeding of any nature whatsoever pending in said court to assert and *defend* their interests, if any, in such suits or proceedings, within such period of time prior to judgment as the Court of Claims shall prescribe. If the name and address of any such person is known or can be ascertained by reasonable diligence, and if he resides within the jurisdiction of the United States, he shall be summoned to appear by personal service; but if any such person resides outside of the jurisdiction of the United States, or is unknown, or if for any other good and sufficient reason appearing to the court personal service cannot be had, he may be summoned by publication, under such rules as the court may adopt, together with a copy of the summons mailed by registered mail to such person's last known address. The Court of Claims may, upon motion of the Attorney General, in any suit or proceeding where there may be any number of persons having *possible interests therein,* notify such persons to appear to assert and *defend* such interests. Upon failure so to appear, any and all claims or interests in claims of any such person against the United States, in respect of the subject matter of such suit or proceeding, shall

forever be barred and the court shall have *jurisdiction to enter judgment pro confesso upon any claim or contingent claim asserted on behalf of the United States against any person who,* having been duly served with summons, fails to respond thereto, to the same extent and with like effect as if such person had appeared and had admitted the truth of all allegations made on behalf of the United States. Upon appearance by any person pursuant to any such summons or notice, the case as to such person shall, for all purposes, be treated as if an independent proceeding had been instituted by such person pursuant to section 250 of Title 28, and as if such independent proceeding had then been consolidated, for purposes of trial and determination, with the case in respect of which the summons or notice was issued, *except that the United States shall not be heard upon any counterclaims, claims for damages or other demands whatsoever against such person, other than claims and contingent claims for the recovery of money hereafter paid by the United States in respect of the transaction or matter which constitutes the subject matter of such case, unless and until such person shall assert therein a claim, or an interest in a claim, against the United States,* and the Court of Claims shall have jurisdiction to adjudicate, as between any and all adverse claimants, their respective several interests in any matter in suit and to award several judgments in accordance therewith." (Italics added.)

We have italicized certain language of the section which shows beyond question that it was intended to apply to situations in which the Government, being sued by one person, asserts a contingent claim against a third person, the contingency being that if the plaintiff prevails against the Government, the Government is entitled to recover over against the third person. That this is economical and efficient modern procedure is clear. That it is just as economical and efficient as applied to litigation unrelated to the Contract Settlement Act, for example the instant litigation, as it is in war contract settlement litigation is equally clear. We have, then, comprehensive statutory language, which, if taken at its face value produces a desirable result in keeping with modern judicial procedure. We have section 14 (a), immediately preceding the section in question, in which Congress amended its bill to give that section general application, and not limit it to contract settlement cases. But we have also section 14 (c), 41 U.S.C.A. § 114(c) which is as follows:

"The jurisdiction of the Court of Claims shall not be affected by this chapter except to the extent necessary to give effect to this chapter, and no person shall recover judgment on any claim, or on any interest in any claim, in said court which such person would not have had a right to assert in said court if this section had not been enacted."

We do not know just what Congress meant by subsection (c). This is a court whose jurisdiction is defined in a statute, and there are certain kinds of claims, even against the Government, on which the Government has not consented to be sued. It would seem that, in enacting subsection (c), Congress, out of an abundance of caution, was making certain that claims of a kind on which the Government had not consented to be sued should not come in under this statute.

We conclude, then, that section 14(b) is not limited in its application, as the plaintiff contends, to cases arising under the Contract Settlement Act. See Hardin County Savings Bank v. United States, supra, 102 Ct.Cl. 815; Central National Bank of Richmond v. United States, 84 F.Supp. 654, 114 Ct.Cl. 390.

In Arlington Trust Co., Inc., v. United States, Ct.Cl., 139 F.Supp. 556, we concluded that since the third party had already been paid and was not asserting

any claim against the Government, it could not be summoned into the case. The third party's situation in that case was like that of the third party in the instant case, except that the Arlington Trust case did involve a Contract Settlement Act claim.

We have concluded that we were in error in dismissing the third party from the Arlington Trust case. Although the question of the constitutionality of section 14(b) was not raised in that case, it had been called to our attention in other cases, and we thought, erroneously, as we have now concluded, that a third party making no claim against the Government could not be summoned into a proceeding in this court to defend against a contingent claim by the Government. The constitutional problem was that of a trial by jury, which he would not have in this court, but would have, under the Seventh Amendment to the Constitution, if the Government were obliged to sue him in a United States District Court.

The problem is analogous to that of counterclaims by the Government against plaintiffs in this court. Title 28, U.S.C., section 1503, gives this court jurisdiction or set offs or demands by the Government against plaintiffs in this court. One may sue the Government upon a claim, perhaps a rather small one, and find himself faced with a counterclaim by the Government, perhaps for a large amount, and on a wholly unrelated matter. If the plaintiff had not brought his suit, the Government would have had to sue him in a District Court, and he would have been entitled to a jury trial. In McElrath v. United States, 102 U.S. 426, 440, 26 L.Ed. 189, the Supreme Court said:

"Suits against the government in the Court of Claims, whether reference be had to the claimant's demand, or to the defense, or to any set-off, or counter-claim which the government may assert, are not controlled by the Seventh Amendment. They are not suits at common law within its true meaning. The government cannot be sued, except with its own consent. It can declare in

what court it may be sued, and prescribe the forms of pleading and the rules of practice to be observed in such suits. It may restrict the jurisdiction of the court to a consideration of only certain classes of claims against the United States. Congress, by the act in question, informs the claimant that if he avails himself of the privilege of suing the government in the special court organized for that purpose, he may be met with a set-off, counter-claim, or other demand of the government, upon which judgment may go against him, without the intervention of a jury, if the court, upon the whole case, is of opinion that the government is entitled to such judgment. If the claimant avails himself of the privilege thus granted, he must do so subject to the conditions annexed by the government to the exercise of the privilege."

Applying the Supreme Court's reasoning to the section 14(b) situation, Congress has, by this section, informed persons who deal with the Government and receive payments from it, that the contingency may arise that some other person may sue the Government, claiming that the payment should have been made to him; that if that contingency does arise, the Government shall have the right to protect itself against the possibility of having to pay twice for the same goods or services, by reason of possibly inconsistent decisions of different courts, by having the rights of both parties adjudicated in one trial before one court.

■■. If Congress had spelled out in all this detail in section 14(b) the constitutional basis of its action, there would be no doubt of its power to attach the described condition to transactions with the Government. Though the language of section 14(b) is involved and difficult to read, a careful reading of it shows that Congress intended that third parties in the situation of the instant third party might be brought into litigation which concerned their right to retain payments received by them. It is not necessary

for Congress to express the constitutional basis of its legislation.

The motion of the third party, Fidelity Trust Company, for reconsideration of its motion for dismissal is denied but the order of February 6, 1956, denying said motion is amended in that the phrase "without prejudice" is deleted.

The motion of the defendant for leave to file a motion for a summons to the third party is granted, as is its motion that the court issue a summons to the third party.

It is so ordered.

LITTLETON, Judge, concurs.

JONES, Chief Judge.

I concur on the ground that when anyone makes a contract with the Government, he is charged with knowledge of its sovereign immunity, and with the fact that in the event of a dispute his only chance to collect is by suit on such terms as the Government may name; and that since one of the conditions that the Government has named is that such issues shall be tried in a Tucker Act forum which operates without a jury, such a contractor voluntarily and knowingly agrees to such forum in respect to the trial of any issues arising out of the operations under the contract.

By analogy anyone who takes an assignment under the Assignment of Claims Act as security for furnishing money essential to such an operation, and likewise anyone who becomes surety as to its performance, by these acts enters into a legal relationship with the Government and also submits himself to a Tucker Act forum in disputes arising out of this relationship. By these acts he waives the right to trial by jury on the issue that may arise out of the performance of, or payments under the contract. The prime contract, the lending of money upon the assignment, and the surety bond are all part and parcel of one transaction. They should be litigated in one action.

It is idle to talk about one who has improperly collected under a contract having no further interest in it. Of course such a one would like to give a grunt of satisfaction and say everyone else may "go hang."

One of the most ancient maxims of Anglo-Saxon jurisprudence is that "Anyone who claims the benefits of a contract must assume its corresponding burdens."

If the third party has been improperly paid, then either the Government must pay twice, or some just claim must remain unpaid or the one who has been unjustly enriched must be made to disgorge. In either event, if the third party is dismissed, then if justice is to have a chance to prevail, there would of necessity be another lawsuit. I believe that is just what the Contract Settlement Act of 1944, cited in the majority opinion, was intended to prevent.

The third party not only claims some of the benefits. It has secured benefits, the allegations say unjustly. Must the law remain helpless in the presence of a legal wrong, or in the alternative go backward to a multiplicity of suits?

WHITAKER, Judge, joins in the foregoing concurring opinion.

LARAMORE, Judge.

I respectfully dissent because (1) the question is moot by reason of a disclaimer by the third party, Fidelity Trust Company, to any of the undisbursed contract proceeds; (2) the third party procedure set up by section 14 of the Contract Settlement Act of 1944 is applicable only to termination claims, and the claim asserted by plaintiff is not a termination claim; (3) the majority opinion unconstitutionally deprives Fidelity Trust Company of a jury trial as guaranteed by the Seventh Amendment to the Constitution; and (4) the plaintiff has no standing to sue in this court.

The posture of the case as it stands now should be noted. The plaintiff filed a petition seeking the alleged unpaid balance, $112,000, held by defendant under a contract that had been completed by the contractor. The plaintiff requested that Fidelity Trust Company be brought into

the proceeding because it was believed that Fidelity had an interest in the proceeding. Notice was issued to Fidelity to come in and assert or defend any interest it had in the proceeding. On the same day that the petition was filed the defendant paid $56,287.68 to Fidelity pursuant to an assignment under the Assignment of Claims Act of 1940, as amended, 31 U.S.C. § 203, 31 U.S.C.A. § 203. Subsequently, Fidelity filed a disclaimer of any interest in the money still in the hands of defendant.

The plaintiff bases its claim on the merits on Royal Indemnity Co. v. United States, 93 F.Supp. 891, 117 Ct.Cl. 736; Hadden v. United States, 132 F.Supp. 202, 132 Ct.Cl. 529; and National Surety Corporation v. United States, 133 F. Supp. 381, 132 Ct.Cl. 724, certiorari denied, 350 U.S. 902, 76 S.Ct. 181. These cases stand for the proposition that a surety on a payment or performance bond has a superior equitable right over an assignee under the Assignment of Claims Act, supra, to the proceeds held by the Government in a stakeholder capacity and that this court has jurisdiction to determine this right. Had defendant not paid Fidelity, the assignee, this case would on the merits be governed by those decisions. However, as noted above, defendant has already paid Fidelity and Fidelity has formally disclaimed any right to the sums now held by defendant. The Government is no longer a stakeholder. The payment by the Government of the $56,287.68, pursuant to the assignment under the Assignment of Claims Act, supra, as it had the right to do, automatically deprived this court of jurisdiction over the question of which party, the surety or assignee, had the superior equity to that sum. It is clear under the Assignment of Claims Act, its history, and the Supreme Court decisions, that the Government has the right to pay the contractor or his assignee under the act and thereby discharge its liability without being in "danger of becoming embroiled in conflicting claims, with delay and embarrassment and the chance of multiple lia-

bility." Martin v. National Surety Co., 300 U.S. 588, 594, 57 S.Ct. 531, 534, 81 L.Ed. 822; Hobbs v. McLean, 117 U.S. 567, 6 S.Ct. 870, 29 L.Ed. 940; McGowan v. Parish, 237 U.S. 285, 35 S.Ct. 543, 59 L.Ed. 955. Thus it is clear, and our decisions in Royal Indemnity Co., Hadden, and National Surety Corporation, supra, concede, that the Government can pay the proceeds under the contract to the contractor or to his assignee, if he has assigned the contract pursuant to the Assignment of Claims Act, without subjecting itself to double indemnity. Thus the Government has discharged its liability under the contract and statute to the extent of the $56,287.68 and plaintiff cannot obtain a judgment against it for this amount. This fact and the disclaimer by Fidelity to any of the proceeds now held by the Government clearly show that Fidelity has no interest whatsoever in this case and that the Government has no legal interest in the sum already paid Fidelity. As noted above, the most that plaintiff could possibly recover from the Government is the money the Government now has on hand under the contract. Thus, this puts the plaintiff in the position of suing Fidelity for the $56,-287.68. Such a suit involves a dispute between private parties in which the Government has no interest. This court clearly does not have jurisdiction of such a suit. The court's jurisdiction is confined to the rendition of money judgments in suits brought for that relief against the United States. See United States v. Sherwood, 312 U.S. 584, 61 S. Ct. 767, 85 L.Ed. 1058, and cases cited therein. There is no authority by precedent or statute for this court to enter judgment and execute it against a private party.

The majority opinion holds that section 114 of title 41, which is section 14 of the Contract Settlement Act, was a section of general application that amended our general jurisdiction. The act by its terms specifically provides in section 14 (c) that "The jurisdiction of the Court of Claims shall not be affected by this chapter except to the extent necessary to

give effect to this chapter, [Termination of War Contracts] * * *." The present claim is not a contract termination claim. The majority opinion refers to nothing in the legislative history that supports its interpretation. The letter to the chairman of the subcommitteee, dated April 19, 1944, from the Attorney General, was an unpublished letter which certainly could not be considered as part of the legislative history.

To require Fidelity to remain in this case for a decision on its right to keep the $56,287.68 is to deprive it of its right to the chairman of the subcommittee, enth Amendment to the Constitution.[1] Fidelity has been paid and it cannot be required to give up this sum without, if it desires, a trial by jury. Cf. Ex Parte Skinner & Eddy Corp., 265 U.S. 86, 96, 44 S.Ct. 446, 68 L.Ed. 912. The majority opinion deprives Fidelity of the right to a jury trial on the ground that it automatically waived its right by dealing with the Government and accepting payment pursuant to an assignment, because of some general language in the Contract Settlement Act. It relies on a counterclaim case, McElrath v. United States, 102 U.S. 426, 26 L.Ed. 189, which holds that suits *against* the Government are not controlled by the Seventh Amendment because they are not suits at common law in its true meaning. This decision was based on the rationale that one cannot sue the sovereign without its consent and since the sovereign can prescribe under what conditions it will consent to be sued, a claimant who files suit must subject itself to those conditions, one of which was the right of the Government to counterclaim on a different subject matter. The expressed reason for the decision was that "If the claimant avails himself of the privilege thus granted [to sue the sovereign], he must do so subject to the conditions annexed by the government to the exercise of the privilege." In the instant case Fidelity is not seeking any privilege from the Government, it merely dealt with it.

There is nothing in the Contract Settlement Act that states or indicates that by merely dealing with the Government the person automatically loses its right to a jury trial in the event the Government should desire to sue that person in an action at common law. Moreover, I entertain grave doubt as to whether Congress could constitutionally provide for such a waiver.

I also dissent from the majority opinion because plaintiff has no standing to sue in this court. See dissenting opinion in Hadden v. United States, supra, 132 Ct.Cl. at page 532, and United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022.

I would grant the motion of Fidelity Trust Company and dismiss it from this proceeding.

---

[1] "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, * * *."