LaRamoke, Judge,
concurring in part and dissenting in*, part:
I concur in the majority opinion that plaintiff is entitled to recover of and from the United States the sum of' $10,206.82.
However, I must respectfully dissent to the conclusion, that “since this sum has been erroneously paid to third party-defendants, George and Catherine Stamer, by the defendant,, the United States, it is entitled to recover that amount from them.”
While this issue was neither argued nor raised by the-briefs, I have grave doubts that the Government can inter-plead a third party defendant in an action such as this. True,, if the Government erroneously paid money to a third party, a suit would lie for the return of said payment. However,. I believe the suit should be in a court which can give to the defendant the constitutional right to a trial by a jury, if it so-desires. Since no such right can be granted by this court,. I would dismiss the defendant’s action against the third party defendants. See dissenting opinion in Maryland Casualty Company v. United States, 135 C. Cls. 428, 439.
FINDINGS OF FACT
The court, having considered the evidence, the report of' Commissioner William E. Day, and the briefs and argument. of counsel, makes findings of fact as follows:
1. The plaintiff is a citizen of the United States, and a., resident of the Commonwealth of Massachusetts, residing at. 12 Pierce Street, Arlington Heights.
2. This suit is brought by the plaintiff, claiming as the», widow of a deceased soldier, Master Sergeant Francis Plarold Stamer, to recover back pay, six months’ death gratuity and-' apparently in the alternative in the event of an adverse-decision on the above, to recover an amount equal to an allotment of $240. per month for a twenty-month period.
*500 3. Tbe defendant has filed a contingent cross-claim against George F. Stamer and Catherine Stamer, the father and mother of the soldier. On October 4,1954 the defendant paid the six months’ death gratuity in the sum of $1,694.40 to the father, and on November 3,1954 paid arrears of pay due the soldier in the sum of $8,227.52 to his parents. The above payments were made by the Army.
4. Francis Harold Stamer enlisted in the Regular Army on May 3,1939 in New York City. He was then 24 years old, (date of birth January 3,1915). He was unmarried. In his enlistment papers he gave as his address 117-23 197th Street, St. Albans, Long Island, New York, which was the home of his parents. He was given an honorable discharge at Fort Dix, New Jersey on November 21,1945, and gave as his permanent address the same address as given above, that of his parents.
5. Although the circumstances under which the soldier did so are not clear, between November 21,1945 and June 29,1946, the soldier went to San Fernando, California. He there married a Dorothy Mohr during the period referred to above. On June 29,1946 the soldier enlisted in the Regular Army at Pasadena, California. In his enlistment papers he gave as his address, 14630 Chatsworth Drive, San Fernando, California. He named his wife, Dorothy Stamer, of the above San Fernando address as his beneficiary. He named his mother as his nearest relative, and the person to be notified in case of emergency.
6. The soldier was honorably discharged by the Army on June 29,1949. On July 11,1949, at New Orleans, Louisiana he re-enlisted in the Army. He was in Louisiana because he had recently arrived in the United States from Panama where he had been stationed. The address shown on his enlistment record at that time was 14630 Chatsworth Drive, San Fernando, California. He gave his wife Dorothy Stamer of that address as the person to be notified in case of emergency, with his mother named as an alternate. His wife was also named as the custodian to whom personal effects were to be shipped. She was also designated by him as the person to receive six months’ gratuity pay in event of his death. His mother and then his sister were named as alternates. In this *501 enlistment the soldier enlisted for assignment with the 7th Infantry Eegiment at Fort Devens, Massachusetts.
7. In the meantime, the soldier had furnished the following information for his record of emergency data. On December 28,1948 he designated first his father, then his sister, both of 138 Devonshire Drive, New Hyde Park, New York as the persons to be notified in case of emergency. He named his father as the custodian to whom personal effects were to be shipped. He named his father to receive 100 percent of his pay under the heading: “As a guide in administering legislation governing the well-being and protection of my dependents in the event that I am unable to make provision therefor, * * He also named his wife Dorothy Stamer of the San Fernando address as the person to receive the six months’ gratuity pay in event of death, with his father and then his sister as alternates.
8. On December 22, 1949 the soldier re-enlisted in the Kegular Army at Fort Devens, Massachusetts for an indefinite period. He gave as his address 14630 Chatsworth Drive, San Fernando, California.
9. Two days earlier, on December 20,1949, he furnished the following information for his record of emergency data. He named his father as the person to be notified in case of emergency, with his brother as alternate. He named his father as the custodian to whom personal effects were to be shipped. He named his father to receive 50 percent of his pay under the heading relating to the administering of legislation for the well-being and protection of dependents. He named his wife Dorothy Stamer of the San Fernando, California address as the person to receive the six months’ gratuity pay in case of death, with his father, then his brother as alternates.
10. In the meantime the soldier had become acquainted with the plaintiff who had been divorced since 1942. On December 23, 1949 the plaintiff and the soldier went to Nashua, New Hampshire and gave notice of their intention to be married. They returned to Nashua, New Hampshire on December 29, 1949 and went through a marriage ceremony at that time. The marriage certificate is in evidence and shows that at that time the plaintiff was 31 years old, and *502 gave her residence as Arlington, Massachusetts. The soldier was 34 years old, and showed his residence as Ayer, Massachusetts. This was the nearest town to Fort Devens, about three or four miles distant. The marriage certificate shows that the plaintiff was divorced and that it was her second marriage. The soldier falsely stated that it was his first marriage.
11. On the night of December 29,1949, after the marriage ceremony, the soldier telephoned his mother and talked with his mother and his sister, both of whom were concerned and told him so, since they knew, as he knew, that he already had a wife. The plaintiff has testified that she did not converse with the mother or the sister but the evidence is convincing that she did so, and at that time learned that the soldier already had a wife.
12. The plaintiff and the soldier lived as husband and wife in a trailer court called Casa Manor at Ayer, Massachusetts for about six weeks and then at 42 East Main Street, Ayer, Massachusetts, until August 2,1950 when the soldier departed with his unit for Korea. During part of this time he was away on military maneuvers.
13. About February 20, 1950 the soldier’s mother and sister went to Boston, Massachusetts and stayed at the Copley Plaza Hotel for two or three days. The plaintiff and Francis Harold Stamer were with his mother and sister several times during this visit, having had dinner at the hotel one evening, and at a restaurant, after a drive on another evening. Discussions were had among the four as to the prior existing marriage of the soldier.
14. It is admitted by the plaintiff, that in April 1950 she knew that she was not legally married to Francis Harold Stamer because of his prior existing marriage to Dorothy. Despite this knowledge the plaintiff and Francis Harold Stamer continued to live as husband and wife.
15. On July 24,1949 the soldier made a Class E allotment of $40. per month to his wife, Dorothy Stamer. This was paid by the Army until March 31, 1951 when such payment was discontinued.
16. Since the plaintiff had never received an allotment check, prior to the soldier’s departure for Korea, there were *503 many discussions between the plaintiff, the soldier and his parents concerning the soldier’s prior marriage. The result of such discussions was that the soldier’s parents loaned the plaintiff $250. which she gave to the soldier for the purpose of securing a divorce or annulment of his prior marriage.
17. The soldier was referred to a lawyer by the plaintiff. That lawyer, through a California lawyer, began legal proceedings for the annulment of the marriage between Francis Harold Stamer and Dorothy Mohr Stamer. Dorothy was the plaintiff. The soldier as defendant filed his general appearance and waived his rights under the Soldiers and Sailors Civil Eelief Act, and consented to trial without notice. The cause came on for hearing on August 3,1950 in the Superior Court of California in and for the County of Ventura. On August 21, 1950 that court entered its decree of annulment which reads in part as follows:
Now, therefore, the court finds that plaintiff is a resident of California, and that good cause for annulment of the said marriage exists. The court further finds that plaintiff has filed her amended complaint alleging that the misrepresentations of defendant were the inducing cause for plaintiff’s consent to said marriage, and were so intended by defendant.
It is hereby ordered, adjudged and decreed that the marriage between plaintiff and defendant is annulled and is of no force and effect whatsoever; and further that plaintiff Dorothy Stamer has restored to her, her maiden name of Dorothy Mohr.
Done in open court this 21st day of August, 1950.
18. Within a week after the soldier’s departure, the plaintiff left Massachusetts to live with his parents in New York State. The soldier had made arrangements with his parents for her to do so. The parents were planning to sell their home and move to an apartment, but the arrangement was that the plaintiff might live with them until that move was accomplished. This was done. The plaintiff took most of her household effects leaving only a few items with her mother in Massachusetts. She returned to Massachusetts only briefly toward the latter part of August for the purpose of getting leave of court permitting the removal to New York of her minor daughter of a previous marriage.
*504 19. Up to the time of the annulment the soldier had claimed and had been paid a quarters’ allowance for Dorothy Stamer as his wife. No quarters’ allowance was ever claimed by the soldier on account of the plaintiff as his wife.
20. On August SI, 1950 the soldier authorized a Class E allotment to plaintiff in the amount of $200. per month, effective September 1, 1950. This authorization showed plaintiff’s address as New Hyde Park, Long Island, New York. On September 25,1950 the soldier increased plaintiff’s monthly allotment to $240. per month, effective November 1, 1950. She was then shown as living in St. Albans, Long Island, New York.
21. Francis Harold Stamer was reported missing in action in Korea on November 2, 1950. By letter dated December 12, 1950 plaintiff notified the Department of the Army that she was moving her residence from New York to Massachusetts. The plaintiff had in the meantime moved back to Massachusetts.
22. By error the allotment which the soldier had made for Dorothy M. Stamer had not been discontinued when she received her decree of annulment on August 21, 1950. As soon as the error was discovered by the Army the allotment was discontinued, effective March 31,1951.
23. Excessive deductions caused by the simultaneous payment of the allotments to Dorothy M. Stamer and the plaintiff had created a deficit in the soldier’s accounts. Consequently the plaintiff’s allotment was discontinued on April 30,1951 in order that the deficiency might be made up. Allotments had been paid to plaintiff for the period November 1,1950 through April 30,1951.
24. By letter dated April 4, 1951 the Department of the Army advised Representative Edith Nourse Rogers, who had interested herself in the plaintiff’s case, that plaintiff was not regarded as the wife of the soldier. On April 17, 1951, George L. Wilson, Esq., as attorney for plaintiff, wrote to assert to the Army plaintiff’s contention that she was the lawful wife of the soldier.
25. In order to clarify plaintiff’s opposition and to determine her eligibility for continued receipt of the Class E *505 allotment, the Department of the Army, by letter dated May 9,1951, requested plaintiff to obtain a declaratory judgment from a court of competent jurisdiction as to her marital status.
26. By letter dated May 23,1951 the parents of the soldier, third party defendants herein, through their attorney, Thomas J. Mirabile, Esq., filed notice of their claim to all monies due the soldier. On June 8,1951, Mr. Mirabile again wrote on behalf of the soldier’s parents to assert their claim as the only persons entitled to any monies due the soldier.
27. On June 27, 1951 the Department of the Army informed the attorney for the soldier’s parents that the allotment paid to the plaintiff had been discontinued on receipt of evidence that the soldier’s marriage to plaintiff was void. Thereafter, on July 26, 1951, the Army advised plaintiff’s attorney that, in the absence of a declaratory judgment to the contrary, there was no authority to re-establish plaintiff’s allotment because she was not related to Francis Harold Stamer. This position was reiterated by letter of October 24,1952 advising that the Army would make no payment to plaintiff in the absence of proof that she was the wife of the missing soldier.
28. On December 31, 1953, Francis Harold Stamer was found by lawful authority to be dead. He died intestate and without issue.
29. It is found that Francis Harold Stamer was domiciled in Ayer, Massachusetts at the time of his death.
30. On July 31, 1950 Francis Harold Stamer applied for and was issued National Service Life Insurance, in which application he named the plaintiff as the principal beneficiary in the sum of $10,000. He gave as his address 138 Devonshire Drive, New Hyde Park, New York, the home of his parents. He also showed this as his address on such application.
31. The plaintiff has been paid the $10,000, insurance by the Veterans Administration.
32. The plaintiff is currently, and has been, receiving a pension as the unremarried widow of Francis Harold Stamer from the Veterans Administration.
*506 33. On January 15, 1954 the deceased soldier’s parents requested that they be supplied with all forms necessary to apply for monies which might be due the decedent.
34. By letter dated June 2,1954, plaintiff was again urged by the Army to submit some evidence which would clarify her marital status. On the same date the Department of the Army advised the decedent’s parents of the types of benefits accruing to their son, and also informed them that no conclusive determination of his marital status had been made pending receipt of necessary data. In response to this communication, decedent’s parents, by letter dated June 11,1954, advised the Army that plaintiff was not the legal wife of decedent because he was already married when the purported marriage to plaintiff took place.
35. On September 21, 1954 the parents presented to the Department of the Army their formal claim for the six months’ death gratuity and for all arrears of pay and allowances accruing to decedent’s account. Pursuant to the claim thus made, and because no requested proof of the legality of her marriage had been submitted by plaintiff, the Army, on October 4,1954, paid the six months’ death gratuity to George F. Stamer, decedent’s father, in the full amount of $1,694.40. For the same reasons, on November 3, 1954, the arrears of pay and allowances were paid to decedent’s parents in the full amount of $8,227.52. Thereafter, on November 16,1954, the attorney for plaintiff inquired of the Army about benefits which plaintiff might obtain if she secured a declaratory judgment as to her marital status. The Army replied to plaintiff by letter of November 24, 1954 that all sums due decedent or on account of his death had been paid.
36. On August 13, 1956 the final transaction in Francis Harold Stamer’s account was made when the Department of the Army paid his parents $284.90 as a refund of Government insurance deductions.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover of and from the *507 United States the sum of ten thousand two hundred sis dollars and eighty-two cents ($10,206.82).
It is further concluded that the defendant is entitled to recover on its cross-claim against tire third party defendants and it is therefore ordered and adjudged that the defendant recover of and from the third party defendants the sum of ten thousand two hundred six dollars and eighty-two cents ($10,206.82).