**NEWARK INSURANCE COMPANY, a Body Corporate**

v.

**UNITED STATES (Pioneer Bank and Trust Company, Third Party Defendant).**

No. 515–56.

United States Court of Claims.

March 2, 1960.

William F. Kelly, Washington, D. C., for plaintiff.

Geoffrey Creyke, Jr., Washington, D. C., Hudson & Creyke, Washington, D. C., on the brief, for third party defendant Pioneer Bank and Trust Co.

Kathryn H. Baldwin, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

JONES, Chief Judge.

W. A. Gray, trading as W. A. Gray Construction Company, made several contracts with the United States for construction work. The plaintiff Insurance Company was the surety on Gray's labor and materialmen's bonds on these con-

tracts. Only two of Gray's several contracts, and the bonds related to those two contracts, are involved in this suit.

Gray assigned to Pioneer Bank and Trust Company, hereinafter called the bank, the moneys which would become due to Gray for performing the two contracts. The bank gave to the United States and to the plaintiff surety the notices of Gray's assignments to it, which notices are provided for by the Assignment of Claims Act of 1940, 54 Stat. 1029, 31 U.S.C.A. § 203. Gray completed the work on the two contracts, but did not pay all of his laborers and materialmen. The plaintiff surety thereupon became obligated to pay the laborers and materialmen. The plaintiff alleges in its petition that it advised the Government of the situation and claimed the right to receive from the Government any money owing to Gray on the contracts; that it was assured by the Government's officials that no further payments would be made to Gray or to his assignee, the bank, until the matter had been referred to Washington for decision; that thereafter the Government, notwithstanding these assurances, paid the money in question to the bank as assignee of Gray.

The Government made a motion for a summary judgment dismissing the plaintiff's petition. It urged that, the Government having paid out the money, it could not be required to pay it again to the surety. We denied the Government's motion in an opinion issued on January 14, 1959, Ct.Cl., 169 F.Supp. 955.

The Government had, earlier in these proceedings, filed a contingent cross-claim against the bank, demanding that, if the Government should be held liable to the plaintiff, it should be given a judgment for the same amount against the assignee bank, because it would have paid the money to the bank under mistakes of fact and law. After our decision denying the Government's motion for a summary judgment dismissing the plaintiff's petition, the bank, having theretofore filed a motion to dismiss the Government's cross-claim, amended its motion

to dismiss, and the instant phase of the case is concerned only with that motion. Both the Government and the plaintiff surety oppose the bank's motion.

The bank urges several grounds in support of its motion. One of them is that the Assignment of Claims Act of 1940, as amended in 1951, 65 Stat. 41, 41 U.S. C.A. § 15, by its language and intent, forecloses any asserted right of the Government to recover money paid to the bank as assignee.

The original Assignment of Claims Act of 1940, permitting a Government contractor to validly assign to a bank or other financial institution the money which the contractor would earn under his contract, had for its purpose, of course, the enabling of contractors to obtain private financing of their Government contracts. The original Act provided that War and Navy Departments contracts might provide that they could be assigned "not be subject to reduction or set-off", and if the contracts did so provide, the Government's obligation to the assignee should "not be subject to reduction or set-off for any indebtedness of the assignor to the United States arising independently of such contract."

Questions arose as to what kinds of indebtedness of the contractor to the United States arose "independently" of the assigned contract. In an opinion dated May 18, 1950, 30 Comp.Gen. 98, 100, the Comptroller General ruled that unpaid federal tax claims against the contractor, for taxes due on wages paid employees in the performance of the contract did not arise "independently" of the contract and could be set off against the money otherwise due the assignee. The Comptroller General on May 17, 1949, 30 Comp.Gen. 270, ruled that there could be set off by the Government, "or recovered directly from the assignee if already paid" amounts by which the contract price had been reduced pursuant to a price revision article in the contract.

Because of these and other similar rulings of the Comptroller General, financial institutions were uncertain as to how much security assignments of Govern-

ment contracts gave them, and they were hesitant about financing Government contracts. The 1940 Act was amended on May 15, 1951, 65 Stat. 41, 41 U.S.C.A. § 15, and the fourth paragraph of the amended Act provided:

"In any case in which moneys due or to become due under any contract are or have been assigned pursuant to this section, *no liability of any nature of the assignor to the United States* or any department or agency thereof, whether arising from or independently of such contract, shall create or impose any liability on the part of the assignee to make restitution, refund, or repayment to the United States of any amount heretofore since July 1, 1950, or hereafter received under the assignment." [Italics added.]

The bank urges that this statute is conclusive. The Government says it is inapplicable to the instant situation.

■ The Government argues that regardless of what may be the law as between private persons as to payments made under mistakes of fact or law, no Government agent has the power to irrevocably dispose of Government money by such a mistake. This is sound legal doctrine. Wisconsin Central Railroad Company v. United States, 1896, 164 U. S. 190, 17 S.Ct. 45, 41 L.Ed. 399; Royal Indemnity Co. v. United States, 1941, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361; Fansteel Metallurgical Corp. v. United States, Ct.Cl., 172 F.Supp. 268. And, the Government cites United States v. Wurts, 1938, 303 U.S. 414, 415, 58 S.Ct. 637, 82 L.Ed. 932, to the effect that the doctrine prevails unless Congress has "clearly manifested its intention" to waive the doctrine in a particular situation.

■ We do not think the cross-claim against the third party defendant should be dismissed. The 1940 Assignment of Claims Act, supra, was enacted for the purpose of protecting the assignee who financed the contractor in "moneys due or to become due under any contract."

In other words, the Pioneer Bank and Trust Company in this instance was to have first call on any money due or to become due. The money for this purpose was to become due only when the terms of the contract were complied with by the contractor and the proper payments were made under the contract.

The Newark Insurance Company as surety was under bond to see that the terms of the contract were carried out. It had first call on any funds necessary for this purpose.

Pioneer had the first call on any funds that were earned under the contract and that were not committed to the payment for labor and materials, but Pioneer was paid funds in excess of these amounts. If the money necessary to perform the obligations of the contract had first been used for that purpose, the bank would not have been paid these funds, certainly not the amount that it was paid.

The funds were paid to Pioneer under a mistake of fact and in excess of the amounts either that were due Pioneer under the contract and assignment or in excess of any amounts that became due it for the work performed.

To the extent that Pioneer was paid funds which it would not have been paid had the proper disposition been made of the available funds, Pioneer has received a windfall that it would not have otherwise received. It has been paid funds in excess of the net amount due it since such payment should have been limited to any amounts left after the surety's prior rights had been complied with.

Pioneer has money in its hands that should have been paid to someone else; money that it would not have received had the mistake not been made. We realize that Congress meant to fully protect the individual bank or other financing institution in any funds flowing from the contract, but this payment was in excess of those funds and beyond the scope of the 1940 statute, as amended.

There may be a serious question as to whether a surety may maintain its suit against the Government in the circum-

stances existing here. If not, the entire proceedings should ultimately be dismissed. But if, when the facts are fully disclosed, it is found that plaintiff may maintain such a suit then Pioneer should be kept as a party so that all rights may be disposed of in one suit.

Certain language is used in the case of United States v. Munsey Trust Co., 1947, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022, considered apart from other expressions in the opinion, might seem to indicate that the surety would not have the right to maintain a suit against the Government. However, the facts in that suit are clearly distinguishable from the facts as alleged in the suit at bar. In the Munsey Trust case the issue was whether the Government might use funds in its hands to settle some outside claims against the contractor and it was held that it could do so. In other words, it was held in effect that under these circumstances neither the surety nor the financing company could have any greater rights than the contractor possessed. In the instant case there is no question of outside claims and the basis of the Munsey Trust decision is therefore not necessarily applicable here.

In the case at bar there may be the added question of whether the surety may have an equitable lien on the funds that were paid to the Pioneer Bank in excess of any amount that the bank was due. All parties are in agreement that as between the surety and the bank, the surety has preference. All of the parties to the instant suit were familiar with the contract and its terms and there is no question about tracing the funds.

At any rate, it will be much simpler to adjust the respective rights as well as to determine whether the suit may be maintained and also as to rights to the funds in question when all of the facts have been developed. The facts may show that there was an assignment by operation of law to the surety at the time the surety was approved by an authorized representative of the defendant.

The motion of the third party defendant to dismiss the defendant's cross-claim is overruled.

It is so ordered.

BARKSDALE, District Judge, sitting by designation, and WHITAKER, Judge, concur.

LARAMORE, Judge, dissents for the reasons given in his dissenting opinion in Maryland Casualty Company v. United States, 141 F.Supp. 900, 135 Ct.Cl. 428.

MADDEN, Judge (dissenting).

I must respectfully dissent.

The problem in this case is to determine as best we can how far Congress intended to go in its 1951 amendment of the 1940 Act, in the direction of making payments made by the United States to assignees of contracts irrecoverable by the Government. The hearings and committee reports [1] show that Congress was dissatisfied with the Comptroller General's rulings in the cases involving the contractor's unpaid taxes, and the reduction of price pursuant to a price revision article in the contract. The language of the 1951 amendment was, however, much broader than it would have needed to be to take care of those situations. It may be that, taken literally, it would make irrecoverable a payment made to the assignee as a result of a purely mathematical mistake, for example, if the Government's bookkeeping showed $10,000 still owing to the contractor when it should have shown only $5,000, and the contractor owed the bank $10,000 or more on his debt secured by the assignment. It is obvious that the 1951 amendment is not so plain as to be self-interpreting.

[1]. Hearings before Subcommittee No. 4 of the House Committee on the Judiciary on H.R. 2947 (subsequently amended, reintroduced, and reported as H.R. 3692), 82d Cong., 1st Sess. p. 9, pp. 2, 4, 8–13, 14, 22–25, 31 etc.). House Report No. 376 (to accompany H.R. 3692), 82d Cong., 1st Sess., pp. 1–3. Senate Report No. 217 (to accompany S. 998), 82d Cong., 1st Sess., pp. 1–2.

But I think the reasoning of the majority goes too far. It holds the payments made to the bank-assignee recoverable merely because they were not properly made, and therefore not made "under the contract." The Assignment of Claims Act protects payments made to an assignee "under the assignment." As the majority states, the Government "paid the money in question to the bank *as assignee* of Gray." The money may have been paid mistakenly, but it was certainly paid under the assignment, which was the only basis for the assignee's claim to it.

The difficult question in this case, as I view it, concerns the nature of the liability upon which the Government's claim for recovery against the assignee is based. The Government, in urging that the paragraph of the statute on which the bank relies is inapplicable, points to the words "no liability of any nature of the assignor to the United States," and says that, in the instant case, the recovery which it seeks from the assignee bank by its cross-claim is not based upon a liability of Gray, the contractor-assignor, to the United States, which should have been, but, by mistake, was not set off against the money otherwise owing to Gray. It is rather, the Government says, based upon the duty of the Government to pay the money in question to the plaintiff surety, which duty it, by mistake, neglected to perform when it paid the money instead to the bank-assignee. I think that there was in the instant case a "liability of the assignor to the United States" within the meaning of the statute. Gray, the contractor-assignor, had completed the contract work but had not paid his laborers and materialmen. His contract with the Government obligated him to pay them. The surety bond which he gave was for the purpose of securing the performance of this obligation. In Continental Casualty Co. v. United States, February 11, 1959, Ct.Cl., 169 F.Supp. 945, the court said that when a surety paid laborers and materialmen it was satisfying two obligations of the contractor, one to the laborers and materialmen and the other

to the United States. See also National Surety Corporation v. United States, 133 F.Supp. 381, 132 Ct.Cl. 724, 728, certiorari denied First Nat. Bank in Houston v. United States, 350 U.S. 902, 76 S.Ct. 181, 100 L.Ed. 793.

The payment which the Government made to the bank-assignee, and which it seeks by its cross-claim to recover if it should be held liable to the plaintiff-surety, it will owe, if at all, to the plaintiff-surety only because of the surety's subrogation to the right of the laborers and materialmen against the contractor, which right was correlative to the obligation of the contractor to the United States to pay his laborers and materialmen. Thus substantially, if somewhat indirectly, the Government's cross-claim against the bank-assignee is to recover money which the contractor-assignor was obligated to the Government to pay to his laborers and materialmen and which he did not pay to them, thus creating a "liability of the assignor to the United States." It was this liability of the contractor-assignor to the United States which the plaintiff-surety discharged by paying the laborers and materialmen, and as a result of which the surety became entitled, under the assignment contained in the surety bond, to the contractor's claim against the Government upon which it is suing here.

The solution of this problem depends upon whether we give to the 1951 statute a fairly liberal interpretation in the direction of affording relief to assignees of Government contracts, or, on the other hand, give it a grudging interpretation because a more liberal interpretation would result in the waiver by the Government of its traditional right to recover money paid by mistake. I think the circumstances leading up to the legislation, and the Congressional purpose disclosed by the legislative history, require us to give the statute the liberal interpretation usually accorded to a relief statute.

I would grant the motion of the third party defendant to dismiss the defendant's cross-claim.