**ROYAL INDEMNITY COMPANY**
v.
**The UNITED STATES and JERSEY STATE BANK, Third-Party.**
**No. 202-65.**

United States Court of Claims.
Jan. 20, 1967.

Richard H. Nicolaides, Washington, D. C., for plaintiff, Royal Indemnity Company. William F. Kelly, Washington, D. C., attorney of record; Richard A. Bartl, Washington, D. C., and Hans W. E. Seltmann, New York City, of counsel.

Edward L. Metzler, Washington, D. C., with whom was Asst. Atty. Gen. Barefoot Sanders, for defendant.

Louis S. Papa, Washington, D. C., attorney of record for third party.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

COWEN, Chief Judge.

Plaintiff, Royal Indemnity Company (hereinafter "Surety"), a Miller Act surety, claims $38,461.29 in retainages held by the Government pursuant to its contract with Albert M. Barbato (hereinafter "Contractor"), Surety's principal. Jersey State Bank (hereinafter "Bank"), contractor's assignee, was brought in as a third party pursuant to Rule 23 and claims $31,200, plus interest, of the retainages. Defendant admits that it holds $38,461.29, but seeks to offset $2,213.07,

plus interest, for withholding taxes not paid by Contractor; defendant considers itself a stakeholder for the balance. Surety and defendant have moved for summary judgment on their respective claims. The facts are as follows:

On April 12, 1963, Contractor entered into a construction contract[1] with the United States Army Corps of Engineers. On the same day Contractor and Surety entered into a Miller Act suretyship agreement. Contractor thereafter commenced work.

On May 31, 1963, Contractor, as collateral security for loans to be made by Bank, assigned to Bank any and all sums due and to become due under the contract. The assignment complied with the Assignment of Claims Act.[2] Between June 3, 1963 and September 2, 1964, Bank made loans to Contractor for use in performance of the 11030 contract, and all payments received under the contract during that time were applied to repayment of the loans. However, principal in the sum of $31,200, plus interest thereon, has not yet been repaid. That is the sum Bank here claims.

By September 1964, Contractor had completed approximately 98 percent of the contract but was unable to finish the remainder. The unfinished portion was deleted from the 11030 contract by a change order and was completed by the Government; an appropriate change in the contract price was agreed upon, leaving $38,461.29 in retainages still due.

Beginning November 20, 1964, Surety, pursuant to its Miller Act payment bond, paid $230,557.20 to Contractor's unpaid laborers and materialmen. Surety alleges that these payments were for claims for labor and materials used for the 11030 contract; Bank contends that they were for claims arising under different contracts.

Defendant admits that it holds $38,461.29 in retainages, but claims an offset of $2,213.07, plus interest, for

---

1.  DA 30–075–ENG–11030, referred to herein as the "11030 contract."

2.  54 Stat. 1029 (1940), 31 U.S.C. § 203 (1964), as modified by 65 Stat. 41 (1951), 41 U.S.C. § 15 (1964).

taxes which Contractor failed to pay. No issue of fact exists as to this offset, and defendant has moved for summary judgment. Surety asserts, however, that its rights to the retainages are superior to defendant's right of offset, citing, inter alia, Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). Surety makes the same argument that we rejected in Barrett v. United States, 367 F.2d 834, 177 Ct.Cl. —— (1966).[3] As we stated in that decision, the claim of the surety is subordinate and inferior to the right of the United States to set off the amount of taxes owed it by the contractor against the contract retainages in the hands of the Government. Defendant's motion for summary judgment on the right to offset the taxes is granted. There thus remains approximately $36,248.22 for which defendant is stakeholder and for which Surety and Bank are adverse claimants.

■ The law has long been settled that the rights of a surety in contract retainages are superior to those of the contractor's assignee: "the equity of the surety company is superior to the rights of the bank acquired under an assignment, whether the surety's rights are derived from the discharge of its liability on a performance bond or on a payment bond." Nat'l Sur. Corp. v. United States, 133 F.Supp. 381, 383, 132 Ct.Cl. 724, 727 (1955), cert. denied sub nom. First Nat'l Bank in Houston v. United States, 350 U.S. 902, 76 S.Ct. 181, 100 L.Ed. 793; accord, Henningsen v. United States Fid. & Guar. Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908); Prairie State National Bank of Chicago v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896); Nat'l Union Fire Ins. Co. of Pittsburgh v. United States, 304 F.2d 465, 157 Ct.Cl. 696 (1962); see Pearlman v. Reliance Ins. Co., supra, 371 U.S. at 136, 83 S.Ct. 232; United Pac. Ins. Co. v. United States, 362 F.2d 805, 808, 176 Ct.Cl. —— (1966).

■ Bank contends, however, that a proper reading of the Assignment of Claims Act leads to the conclusion that an assignee has rights in the retainages superior to those of the surety. That contention has been considered by this court and rejected. See Nat'l Sur. Corp. v. United States, supra; Newark Ins. Co. v. United States, 181 F.Supp. 246, 149 Ct.Cl. 170 (1960); Nat'l Union Fire Ins. Co. of Pittsburgh v. United States, supra. We find no reason to depart from our prior decisions on this question.

■ Bank also argues that there must be some sort of formal declaration of the Contractor's default before the superior rights of the surety arise. That contention is not supported by the case law. All that is necessary for the surety to prevail is that the contractor be in default as a matter of fact; and that as a result of such default, the surety has become obligated to pay under its Miller Act payment or performance bond. No formal declaration of default is required. See Prairie State National Bank of Chicago v. United States, supra; Newark Ins. Co. v. United States, supra.

Bank asserts, however, that in any event Surety is not entitled to summary judgment, because the sums expended by Surety were not for claims arising under the 11030 contract. Surety in its petition alleged that the sum of $220,470 was paid in settlement of claims arising from the 11030 contract. In an affidavit attached to its brief, Bank averred that "Deponent [Bank's president] is further informed and verily believes that the amounts claimed by plaintiff Surety in this action represent payments made by said Surety on contracts other than * * *" the 11030 contract.[4] No further facts or supporting documents are set forth. Surety, as Exhibit I of plaintiff's reply brief, annexes the affidavit of its assistant secretary whose statement consists of "facts known to me personally and reflected from official records of the

---

3. Surety submitted a brief and presented oral argument as amicus curiae in *Barrett*.

4. Affidavit of John T. Stoll, para. 8; see third party's opposition to plaintiff's motion for summary judgment, p. 6.

Royal Indemnity Company to which I have access in the course of my official duties * * *." Affiant further says that Surety paid $230,557.20 to contract 11030 claimants. As Exhibit II Surety has attached copies of the drafts used to make such payments. Surety contends that, under our Rule 64(f), Bank's affidavit and allegations are insufficient to show the existence of a "genuine issue as to any material fact" and that Surety "is entitled to a judgment as a matter of law." We agree.

■ In pertinent part, our Rule 64(f) reads:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein * * *. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, *must* set forth *specific facts* showing that there is a genuine issue for trial. [Emphasis added.]

The language of the rule shows that Bank's averments are insufficient to present an issue of fact.

■ The rule for summary judgment, both under our Rule 64 and under Rule 56 of the Federal Rules of Civil Procedure, is that "mere formal denials or general allegations which do not show the facts *in detail* and *with precision* are insufficient to prevent the award of summary judgment." [Emphasis added.] Engl v. Aetna Life Ins. Co., 139 F.2d 469 (2d Cir. 1943); accord, e. g., Curtis

v. United States, 168 F.Supp. 213, 144 Ct.Cl. 194 (1958), cert. denied, 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959); Garcia v. United States, 108 F.Supp. 608, 123 Ct.Cl. 722 (1952); Bruce Constr. Corp. v. United States, 242 F.2d 873 (5th Cir. 1957). Bank's averment is at best based on hearsay and is merely a belief held by Bank's president. But "belief, no matter how sincere, is not equivalent to knowledge, and * * * the facts set forth in an affidavit in opposition to a motion for summary judgment must be such as would be admissible in evidence should they be given from the witness stand during the trial of a case." Lark v. West, 182 F.Supp. 794, 798 (D.D.C.1960), aff'd, 110 U.S.App. D.C. 157, 289 F.2d 898 (D.C. Cir. 1961), cert. denied, 368 U.S. 865, 82 S.Ct. 114, 7 L.Ed.2d 63.

Bank has made no effort to refute the unqualified affidavit of Surety or to contest the documents supporting the affidavit. Thus, no genuine issue of fact remains for disposition.

Therefore, we hold as follows: (1) Defendant's motion for summary judgment on its offset of $2,213.07, with interest thereon from July 16, 1965, is granted; (2) Surety's motion for summary judgment is granted in the amount of the residue of the contract retainages; (3) Bank is entitled to recover nothing herein and its cross-petition is dismissed; and (4) the claim of the New York State Department of Labor, which at one time asserted a claim against the contract retainages but has failed to appear herein after being duly cited, is forever barred.

The case is returned to the trial commissioner for a determination, pursuant to Rule 47(c) of the respective amounts defendant and Surety are entitled to recover in accordance with this opinion.