**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.**

v.

**The UNITED STATES; TERRE HAUTE FIRST NATIONAL BANK, Third Party.**

**No. 110-58.**

United States Court of Claims.

June 6, 1962.

Robert Edward Losch, Washington, D. C., for plaintiff. O. P. Easterwood, Jr., and McNutt, Dudley & Easterwood, Washington, D. C., on the briefs.

Gerson B. Kramer, Silver Spring, Md., with whom was Asst. Atty. Gen. William H. Orrick, Jr., for defendant. Jay J. Levit, Richmond, Va., on the brief.

John G. Keller, Washington, D. C., for third party defendant, Terre Haute First National Bank. Fowler, Leva, Hawes & Symington, Washington, D. C., on the brief.

LARAMORE, Judge.

This case is in effect a contest between plaintiff surety company and the third party defendant, an assignee bank. Plaintiff is seeking judgment for the amount of a progress payment made under a Government contract plus the amount remaining due and payable from the United States on the contract in question. The Government's position herein is that of a stakeholder without monetary interest in the outcome of this case. However, since the Government is of the opinion that a decision of this case might substantially affect the Government's rights under all Government construction contracts, it has filed a brief and made an argument relative to its independent legal position in this case.

It is, of course, the position of the third party defendant, Terre Haute First National Bank, assignee of the contract in issue, that it is entitled to the money withheld by the Government to the extent of $36,388. The Government takes a similar position.

The facts briefly are as follows: J. E. Russell and Son Construction Company, the contractor, entered into a contract dated April 17, 1957, for construction of a service club building at Bunker Hill Air Base, Bunker Hill, Indiana. Plaintiff, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and the contractor executed two bonds securing performance of the contract and payment to persons supplying labor and materials, and furnished them to defendant. Both bonds were dated April 17, 1957, although actually executed after that date. On or about May 6, 1957, the con-

tractor executed a valid and legal assignment to the third party defendant herein, the Terre Haute First National Bank. Due notice of this assignment, which was executed for the purpose of obtaining funds with which to defray construction, labor, and material costs, was given to the Government and the plaintiff surety. Thereafter, the contractor duly entered into performance of the contract work and the Bank received several progress payments from defendant during the course thereof.

On February 21, 1958, a representative of the plaintiff became aware that the contractor was in financial difficulty, and had a private conference with the contractor concerning such on February 28, 1958. At this time, the contract, although behind schedule, was still being performed, with approximately 60 percent of the work already completed. Neither the plaintiff surety nor the contractor furnished any information to the Government concerning this conference. Prior to the conference, on or about February 26, 1958, the contractor had submitted its partial payment estimate No. 9 to defendant. This estimate covered work performed by the contractor during the month ending February 24, 1958. On March 12 or early on March 13, 1958, the contractor requested defendant to expedite the issuance of a check on partial payment estimate No. 9. This request was granted, as a similar request had been granted to the contractor on at least one previous occasion, and check No. 133355 in the amount of $36,388, the disputed payment herein, was mailed to the Bank on March 13, 1958. Payments on partial payment estimates of a contractor were usually expedited upon request when the money was needed to meet a payroll.

On March 13, 1958, the plaintiff surety and the contractor had a second conference relative to the contractor's financial problems. On the same day, following the conference, plaintiff sent a letter to defendant requesting that progress payments be paid only to plaintiff, in view of the contractor's financial situation.

This letter was received by defendant after it had mailed check No. 133355 to the Bank, and was the first notice received by defendant from plaintiff.

On March 14, 1958, plaintiff telephoned defendant and, upon being advised that check No. 133355 had been mailed to the Bank, requested that payment on the check be stopped. This request was denied for lack of an appropriate basis for such action. On the same day, plaintiff obtained a temporary order from an Indiana state court restraining the Bank from collecting the proceeds of check No. 133355, which order remained in effect until June 6, 1958. Also on the same day, plaintiff instituted the present action in the Court of Claims. As of March 14, 1958, the contract was still being performed with all subcontractors, save one, being on the job. On March 31, 1958, all work on the contract came to a stop and on April 8, 1958, the Government terminated the contract for default.

After the default, the plaintiff surety entered into a contract to complete the remaining work, and prosecuted the work to completion. The proceeds of check No. 133355 are the principal amount withheld by defendant pending the outcome of this litigation. At the time plaintiff obtained its restraining order it had not satisfied any obligations of the contractor. Also at that time the plaintiff had received only two demands totaling less than $13,000. Plaintiff made its initial payment on May 7, 1958.

Thus two questions are present in this controversy. First, is the plaintiff surety company entitled to the proceeds of the check issued in the amount of $36,-388, representing a progress payment for work performed by the contractor during the month ending February 24, 1958. Second, is the plaintiff surety company entitled to the additional amount of $8,-612, representing part of the retained percentages out of the contractor's earnings prior to time of default, less liquidated damages assessed against the contractor.

In respect to the latter issue, the contractor, although duly served with process under the rules of this court, has not appeared in the present case. In any event there appears to be no reason why the contractor has a legitimate claim to the amount in excess of the check issued. Furthermore, the third party defendant has made no claim for this amount. Consequently, we hold that plaintiff is entitled to recover, and judgment will be entered for plaintiff against defendant in the amount of $8,612.

The final issue, therefore, is whether the plaintiff surety or the third party defendant is entitled to the remaining funds held by the Government as a stakeholder.

At the outset, we are not unmindful of the position taken by this court in a number of previous decisions to the effect that the equity of a surety on a Government construction contract is superior to the rights acquired by a bank under a valid legal assignment from the contractor. National Surety Corporation et al. v. United States, 132 Ct.Cl. 724, 133 F.Supp. 381, and cases cited therein. The facts here show, however, that this case is clearly distinguishable from the cases above cited. The gravamen of the National Surety Corporation case, and cases cited therein, is that the contractor had defaulted, thereby giving its surety a superior right as subrogee of the United States. In the instant case, at the time the work was performed for which the progress payment in issue was made, the contractor was not in default. Nor was the contractor in default at the time the check was issued by the United States. Nor was the contractor in default at the time the Indiana state court restrained the Bank from cashing said check. Nor was the contractor in default when the present action was instituted in this court. The plaintiff's case is bottomed on the proposition that the surety's equity in the money withheld by the Government is superior to the rights of the Bank. This may be true, when the contractor is in default, as was stated by this court in the principal case relied on by plaintiff. In National Surety Corporation v. United States, supra, the court stated at page 727, 133 F.Supp. at page 383:

"No one seems to deny that the rights of a surety on a performance bond are superior to the rights of a bank as the contractor's assignee. This is because, as held in the Prairie State Nat. Bank case, the surety is subrogated to the rights of the United States, and the United States had the right to use the money in its hands to complete the contract *on the default of the contractor."* [Italic supplied.]

However, in the instant case when all this action took place, the contract was still being performed by the contractor and all subcontractors, save one, were on the job. True, the contractor was behind schedule. It is also true that plaintiff was in possession of information to the effect that the contractor's financial position was unsound and two conferences were held between plaintiff and the contractor in an attempt to alleviate the situation. The Government was not apprised of this situation at the time, and it is conceivable that had the Government been given the information regarding nonpayment of laborers and material men, the contracting officer might have assured payment without causing a work stoppage and resulting default. In this situation the contractor could have extracted himself from the position of being forced into default on the contract. This possibility was clearly permitted under clause 25 of the contract, which provided:

### 25. WITHHOLDING OF FUNDS TO ASSURE WAGE PAYMENT

There may be withheld from the Contractor so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics employed by the Contractor or any subcontractor the full amount of wages required by this contract. In the event of failure to pay any laborer or mechanic all or part of the wages required by this

contract, the Contracting Officer may take such action as may be necessary to cause the suspension, until such violations have ceased, of any further payment, advance, or guarantee of funds to or for the Government Prime Contractor.

However, even at the time this action was instituted, only two demands for payment by laborers and material men had been received and this only in the amount of something less than $13,000.

In two weeks all work stopped and shortly thereafter the contracting officer terminated the contract for default and called in plaintiff's surety who then completed the contract.

Thus the plaintiff is demanding payment of a contract fund due before default and before a single dollar had been paid out by the surety. Moreover, the claim is for payment of funds far in excess of the demands of the laborers and material men.

In this posture the present case is entirely similar to the case of American Fidelity Company v. National City Bank of Evansville, 105 U.S.D.C. 312, 266 F.2d 910. In that case a surety on a Government construction contract sought reimbursement of sums paid out by it by suing the assignee bank for progress payment collected by the bank prior to the contractor's default. The court therein stated:

"Thus it is seen that a surety has the right to be subrogated, as of the date of his bond, to the rights and preferences of anyone to or for whom he is thereafter required to pay. This right is potential only until the contractor's default causes the surety to pay. It is a shadowy thing until it is given substance by the occurrence of a loss to the surety; theretofore a mere right to subrogation, it then becomes an actuality." [p. 914]

This same conclusion was reached by the Court of Appeals for the Ninth Circuit in Bank of Arizona v. National Surety Corporation, 9 Cir., 237 F.2d 90.

That the surety company had no exercisable right of subrogation prior to loss by it was recognized in Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412, wherein the Supreme Court stated:

"That Hitchcock, as surety on the original contract, was entitled to assert the equitable doctrine of subrogation is elementary. That doctrine is derived from the civil law, and its requirements are, as stated in Aetna Life Insurance Company v. Middleport, 124 U.S. 534 [8 S.Ct. 625]: "1, that the person seeking its benefits must have paid a debt due to a third party before he can be substituted to that party's rights; * * *." [p. 231, 17 S.Ct. p. 144]

Thus, when the defendant mailed the check to the Bank there was no valid reason why the Government should not have made a progress payment. This is especially true in that at no time was the Government notified of any default or lag in payments to laborers or material men. Cf. United States Casualty Co. v. First National Bank of Columbus, D.C., 157 F.Supp. 789.

Furthermore, at the time the plaintiff was not out of pocket one cent. The money in issue was earned prior to default and since the moneys furnished by the Bank to the contractor prior to default were loaned for use in the performance of the contract, it can reasonably be presumed that said moneys were used to pay laborers and material men that plaintiff would have otherwise had to pay.

Under the facts and circumstances of the transaction, the Government had the complete right to make a progress payment under the contract, and it stands to reason that if the Government had the right to pay out the money, the assignee bank had the right to receive and retain the proceeds thereof.

For the reasons above stated, the plaintiff is entitled to recover from the defendant the sum of $8,612; the third party defendant, Terre Haute First Na-

tional Bank, is entitled to recover from the United States the sum of $36,388; and judgment will be entered in these amounts.

It is so ordered.

JONES, C. J., and DAVIS, DURFEE and WHITAKER, JJ., concur.