**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a corporation, and MINT FACTORS, Third-Party Plaintiff,**

v.

**The UNITED STATES.**

No. 345–65.

United States Court of Claims.

April 19, 1968.

Alexander M. Heron, Washington, D. C., attorney of record, for plaintiff, John A. Whitney, Washington, D. C., of counsel.

Lee R. Mintz, New York City, for third-party plaintiff, Harry N. Rosenfield, Washington, D. C., attorney of record.

Mary J. Turner, Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner James F. Davis with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on August 31, 1967. Exceptions to the commissioner's report and opinion were filed by defendant and the third-party plaintiff. The case has been submitted to the court on the briefs of the parties and oral argument of counsel. Since the court is in agreement with the opinion, findings and recommendation of the commissioner, with a small modification, it hereby adopts the same, as modified, as the basis for its judgment in the case as hereinafter set forth. Therefore, the plaintiff, Fidelity and Deposit Company of Maryland, is entitled to recover and judgment is entered for said plaintiff in the sum of $74,191.67. The petition of the third-party plaintiff is dismissed.

Commissioner Davis' opinion, with a small modification by the court, is as follows:

Plaintiff, Fidelity and Deposit Company of Maryland (hereinafter "Surety"), a Miller Act surety, claims $74,191.-67 held by defendant United States pursuant to its contract with Atlantic Wharf Industries, Inc. (hereinafter "Contractor"), Surety's principal. Mint Factors, Contractor's assignee, entered the case as third-party plaintiff pursuant to Rule 23 and claims $55,000 plus interest of the monies held by defendant. Defendant admits it holds $74,191.67 as stakeholder, subject to pay out according to this court's judgment.

The facts are as follows:

On February 19, 1963, Contractor entered into a master contract with the United States through the Department of the Navy for repair and alteration of vessels of the United States. Acting through the Department of Defense, the United States issued job orders on December 11, 1963 and March 5, 1964, for performance of alteration and repairs on, respectively, the U.S.S. Mauna Loa and the U.S.S. Tanner. Contractor and Surety entered into Miller Act suretyship agreements on the respective dates.

Contractor completed performance of the job order on the U.S.S. Mauna Loa on March 16, 1964, and on the U.S.S. Tanner May 21, 1964. However, at the time

the U.S.S. Tanner job was completed, i. e., May 21, 1964, certain laborers and materialmen had not been paid for work performed and materials supplied on both vessels as early as January 1964.

On June 12 and June 29, 1964, Mint Factors loaned Contractor $40,000 and $15,000, respectively, part of which was used to pay laborers and materialmen for work done under the contract. As security for the loans, Contractor assigned to Mint Factors all sums due from the United States under the contract. The assignment complied with the Assignment of Claims Act.[1] No payments have been made on the loan and Mint Factors here claims $55,000 plus $4,000 interest.

Surety was notified as early as March and April, 1964 that Contractor was overdue in making payments to laborers and materialmen. On June 9, 1964, a written notice of nonpayment by Contractor was sent to Surety by Hose-McCann Corporation, one of Contractor's suppliers of labor and materials, noting an unpaid balance of $89,199.

Beginning July 22, 1964, Surety, pursuant to its Miller Act payment bond, paid $311,318.91 to Contractor's unpaid laborers and materialmen for the U.S.S. Tanner job. Likewise, beginning September 29, 1964, Surety paid $52,141.47 on the U.S.S. Mauna Loa job.

Surety contends it is entitled to recover the entire sum held by defendant under the well-established principles stated in Henningsen v. United States Fid. & Guar. Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908); Prairie State National Bank of Chicago v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896), and Nat'l Sur. Corp.

v. United States, 133 F.Supp. 381, 132 Ct.Cl. 724 (1955). Third-party plaintiff Mint Factors, on the other hand, argues that this is an "unusual and special" case and is "virtually identical" on the dispositive facts with Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. United States, 304 F.2d 465, 157 Ct.Cl. 696 (1962), wherein an assignee was held entitled to recover certain funds claimed by a Miller Act surety. Essentially, Mint Factors' position is that it, as assignee of Contractor, is entitled to recover since the contract balance held by defendant was earned by Contractor prior to default and prior to Surety's payment of anything under its bond. Furthermore, Mint Factors argues that since Contractor used funds loaned by it to reduce the obligations under the contract, thereby reducing the payments Surety had to make under its bond, the doctrine of unjust enrichment should prevent double benefit to Surety.

Mint Factors' position is not supported by either the law or the facts of this case. Nat'l Union Fire Ins. Co. held simply that a progress payment made by the United States to an assignee bank prior to default of the contractor could not be recovered by the surety upon later default by the contractor. Comparable facts do not exist here. None of the $74,191.67 held by the United States as stakeholder was ever sent to the assignee, Mint Factors.[2]

In any event, in this case, Contractor was in default at the time Mint Factors made its loans on June 12 and 29, 1964. Invoices dated January 1964 had not been paid by Contractor and one supplier was communicating with Surety on June 9, 1964, concerning the unpaid

---

1. 31 U.S.C. § 203 (1964), as modified by 65 Stat. 41 (1951), 41 U.S.C. § 15 (1964).

2. In Nat'l Union Fire Ins. Co., the Government became a stakeholder of the disputed sum by reason of a state court injunction preventing the assignee from

collecting on the Government check. However, the court treated the case on the law as if the assignee had been paid. This is clear from the fact that the cases cited and relied on by the court all involved suits by a surety against an assignee to recover payments allegedly made erroneously by the Government.

account of Contractor. It is not necessary that there be a formal declaration of the contractor's default. All that is necessary for the surety to prevail is that the contractor be in default as a matter of fact; and that as a result of such default, the surety has become obligated to pay under its payment or performance bond. The surety's potential rights become an actuality when it pays the obligations of its principal. Thereupon, the surety's rights of subrogation relate back to the date of the execution of the surety bonds. Prairie State Bank v. United States, supra; Nat'l Sur. Corp. v. United States, supra. There is no problem in this case of notice to the Government, as was involved in Home Indemnity Co. v. United States, 376 F. 2d 890, 180 Ct.Cl. 173 (1967), and cases cited therein.

Mint Factors' argument that Surety is unjustly enriched since the loan to Contractor reduced dollar for dollar the obligations of Surety is without merit. Such argument was rejected in Royal Indemnity Co. v. United States and Jersey State Bank, 371 F.2d 462, 178 Ct.Cl. 46 (1967), cert. denied Jersey State Bank v. Royal Indemnity Co., 389 U.S. 833, 88 S.Ct. 33, 19 L.Ed.2d 93.[3] In any event, Mint Factors' argument of unjust enrichment is hardly persuasive in view of the fact that on July 17, 1964, after it had loaned Contractor $40,000, Contractor received a payment from the Government on account of work done under the contract in issue for $66,623.40, which payment was turned over to Mint Factors and applied by it toward another indebtedness of Contractor rather than toward the $40,000 loan. (See finding 16.)

Therefore, Surety is entitled to recover the balance of monies due held by defendant under well-establishd principles set out in *Royal Indemnity Co., supra,* and cases cited therein.

3. See "Third Party's Opposition to Plaintiff's Motion for Summary Judgment," filed April 20, 1966, p. 14, in *Royal Indemnity Co.*