**PASCO ENTERPRISES, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 8–87C.**

United States Claims Court.

Sept. 30, 1987.

Stephen C. Snider, Lodi, Cal., attorney of record, for plaintiff. Mullen, Sullivan & Newton, of counsel.

Tamra Phipps, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION ON DEFENDANT'S MOTION TO DISMISS

REGINALD W. GIBSON, Judge.

Pasco Enterprises (hereinafter Pasco or plaintiff) filed a complaint in the Claims Court on January 9, 1987, to recover damages in the amount of $19,370.34 from the Small Business Administration (hereinafter SBA or defendant). In the complaint, plaintiff stated the cause of action against the defendant (*i.e.*, the SBA) as being for sums owed plaintiff due to the SBA having allegedly received a benefit from the storage of property on plaintiff's premises in which the SBA had a security interest. However, in its response in opposition to defendant's motion to dismiss, plaintiff acknowledged that its quasi-contract claim was beyond the jurisdiction of this court under 28 U.S.C. § 1491(a)(1).[1] However, the claim against defendant, asserted plaintiff, nevertheless rested on an actionable implied-in-fact contract. Additionally, avers plaintiff, the defendant should be estopped from denying the existence of the implied-in-fact contract due to defendant's receipt of an economic benefit.

This case in its present posture, therefore, is before the court on defendant's motion to dismiss plaintiff's complaint. Grounds for said motion are failure to state a claim, within the limited jurisdiction of the Claims Court, under 28 U.S.C. § 1491.[2]

To invoke the jurisdiction of this court, plaintiff must allege, which it did not, a violation of the Constitution, a congressional statute, or an executive department regulation. Moreover, the allegations of the complaint do not fall within the jurisdiction conferred by a claim due to an express contract. Rather, by its complaint, plaintiff seeks to invoke this court's subject matter jurisdiction over contracts implied-in-fact. Taking the allegations of plaintiff's pleadings in the light most favorable to it, this court holds that plaintiff has failed to allege the necessary and indispensable elements of an implied-in-fact contract. Therefore, we find that subject matter jurisdiction over plaintiff's claim is lacking and must, as a consequence, grant defendant's motion to dismiss. Like our predecessor Court of Claims, we are a court of limited jurisdiction and, on these facts, must dismiss a claim over which we have no power. *Fidelity & Deposit Co. of Maryland v. United States*, 2 Cl.Ct. 137, 142 n. 12 (1983) (court lacked jurisdiction over uncertified contract claim and dismissed same).

### I. *Facts*

The following factual allegations concerning jurisdiction are presumed true for the purpose of ruling on defendant's motion to dismiss. Pasco entered into a lease for the rental of its industrial property, located in Lodi, California, with Micro Air Systems, Inc. (Micro) on or about June 10, 1984. This lease agreement provided for a monthly rent of $9,098.25. Prior to signing this lease, Micro had secured a loan from the SBA on certain personal property it used in its business. This personal property was later used by Micro on the premises leased from Pasco. The SBA was not a party to the lease between Micro and Pasco.

1. *Hatzlachh Supply Co., Inc. v. United States*, 444 U.S. 460, 465 n. 5, 100 S.Ct. 647, 650, n. 5, 62 L.Ed.2d 614 (1980) ("the Court of Claims jurisdiction with respect to contracts extends only to actual contracts either express or implied in fact; it does not reach claims on contracts implied in law"). *See also Algonac Manufacturing Co. v. United States*, 192 Ct.Cl. 649, 428 F.2d 1241 (1970) (court defines implied-in-law or quasi-contract).

2. 28 U.S.C. § 1491 states, in pertinent part, as follows:

§ 1491. Claims against United States generally;

. . . . .

(a)(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or *implied contract with the United States,* or for liquidated or unliquidated damages in cases not sounding in tort.... (emphasis added).

Subsequent to signing the lease agreement, Micro filed for bankruptcy under Chapter 11. On or about October 28, 1985, the Bankruptcy Court converted Micro's Chapter 11 bankruptcy filing into a Chapter 7 filing. Within three days of the conversion, on or about October 31, 1985, Micro notified plaintiff that it intended to terminate its lease agreement, relinquish possession of plaintiff's premises, and surrender control of its personal property located on the premises. Both plaintiff and defendant were stayed from exercising their respective rights as lessor and secured creditor by the Bankruptcy Code.[3] Thereafter, plaintiff filed with the Bankruptcy Court, on or about December 1, 1985, a request that the Bankruptcy Court terminate Micro's lease.

By the beginning of the new year, on or about January 5, 1986, plaintiff entered an agreement with Golden State Auctioneers, Inc. (Golden State) whereby Golden State assumed responsibility for the rent of plaintiff's premises from January 6, 1986, until the auction, sale, and removal of Micro's abandoned personal property.

## II. *Contentions of the Parties*

Plaintiff argues that defendant is liable for the fair rental value ($19,370.34) of the premises rented by Micro for the period from October 31, 1985, when Micro announced its intention to terminate the lease, to January 6, 1986, when Golden State assumed responsibility for the rent of said premises. Defendant's liability, in terms of plaintiff's contentions, is premised on the alleged benefit that it received as the holder of a security interest in the personal property left on plaintiff's premises during the 67 days after Micro terminated its lease and abandoned the secured property. An implied-in-law contract based on the benefit received and regardless of the parties' intentions, which would solidify

defendant's liability by operation of law, plaintiff concedes is beyond the jurisdiction of this court. On the other hand, however, plaintiff forcefully maintains that this case involves an implied-in-fact contract which arose between itself and defendant and is now the legal basis of defendant's liability. Said alleged implied-in-fact contract resulted, plaintiff avers, from defendant's knowledge of Micro's termination of the lease and it concomitant relinquishment of control over the personal property securing defendant's loan. According to plaintiff's contentions, the mutual concern of both plaintiff and defendant over the disposition of the abandoned personalty evinces their mutual intent to contract. Pointing to its failure to take adverse action against the abandoned property and defendant's failure to remove said property from the leased premises, plaintiff further contends that these circumstances establish the offer and acceptance by conduct necessary to support an implied-in-fact contract for the fair rental value of the premises for the period in issue. Finally, Pasco claims that defendant should be estopped from denying the implied-in-fact contract because it has received a significant economic benefit from plaintiff.

Defendant, on the other hand, supports its motion to dismiss by arguing that plaintiff's factual allegations fail to cut mustard by establishing a viable claim that is within this court's *limited* subject matter jurisdiction. In short, the position of defendant is that clearly there is no express contract between it and Pasco since the government was not a party to Micro's lease agreement with Pasco. Further, says defendant, the plaintiff fails to establish an implied-in-fact contract since both parties were stayed from exercising their respective rights as creditor and lessor by the Bankruptcy Code. Thus, argues defendant, the parties' inaction in terms of not removing or dispos-

---

**3.** 11 U.S.C. § 362 states, in pertinent parts, as follows:

§ 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

\* \* \* \* \* \*

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

\* \* \* \* \* \*

ing of Micro's abandoned property does not, *ipso facto*, establish an offer and acceptance by implication. Defendant concludes its argument with the assertion that there were no communications between the parties, or representations by the defendant, that plaintiff could rely on to estop defendant from denying an implied-in-fact contract.

Given the foregoing, the court fails to find subject matter jurisdiction over plaintiff's claim for the reasons set forth below; and, therefore, must grant defendant's motion to dismiss.

### III. *Issues*

In ruling on defendant's motion to dismiss, the court must determine—whether plaintiff's factual allegation of an implied-in-fact contract evidences all of the indispensable elements necessary to sustain the subject matter jurisdiction of this court when taken as true.

### IV. *Discussion*

█ In analyzing defendant's motion to dismiss, the court applies the rule that all factual allegations of the plaintiff concerning jurisdiction are true. Consequently, the motion to dismiss will succeed "only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." 2A, Moore, *Moore's Federal Practice* ¶ 12.-07 [2.–1] (1987). The burden of establishing subject matter jurisdiction is on the plaintiff, the party asserting jurisdiction. *Id.*

█ In the case at bar, it is clear beyond cavil that subject matter jurisdiction is governed by statute. As a sovereign, it is horn book law that the United States is "'immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976), *quoting United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941) (the Tucker Act "merely confers jurisdiction upon the Court of Claims [now U.S. Claims Court] whenever a substantive

right enforceable against the United States for money damages exists"). The extent to which Congress has consented to a cause of action against the United States is the limit of the jurisdiction of the Court of Claims (now Claims Court) to entertain suits against the United States. *United States v. Sherwood*, 312 U.S. at 587–88, 61 S.Ct. at 770–71. Thus, it is only through the specified circumstances of 28 U.S.C. § 1491 that the United States has allowed its sovereign immunity to be waived. *United Electric Corp. v. United States*, 227 Ct.Cl. 236, 647 F.2d 1082 (1981) (without a direct contractual link no enforceable contract right against the United States exists).

█ The jurisdiction of the Claims Court to render judgment on any express or implied contract with the United States is the relevant condition for jurisdiction under § 1491 in the case now before the court. That is to say that in order to invoke the jurisdiction of the Claims Court under § 1491, the "implied" contract must be an implied-in-fact contract and not one implied-in-law based on various equitable considerations. *United States v. Minnesota Mutual Investment Co.*, 271 U.S. 212, 217–18, 46 S.Ct. 501, 502–03, 70 L.Ed. 911 (1926) (collection of interest by United States on litigant's fund paid into district court did not create a contract whereby United States was bound to pay over interest to owner of fund).

█ Therefore, to recover from the United States on the facts here, plaintiff must establish a pre-existing contractual relationship with the United States within the contemplation of 28 U.S.C. § 1491. *See Penn Towne Buildings, Inc. v. United States*, 4 Cl.Ct. 677, 684 (1984) (general construction contractor could not recover from the United States on the basis of HUD's guaranteeing the project's mortgage). Thus, the jurisdictional burden on plaintiff, to establish an enforceable contract right against the United States, is to show either an express contract or a contract implied-in-fact. Since the SBA was not a party or privy to the lease between

plaintiff and Micro, there is no factual basis upon which this court might find an express contract between plaintiff and the SBA. As to an implied-in-fact contract, the Court of Claims in *Russell Corp. v. United States*, 210 Ct.Cl. 596, 608–09, 537 F.2d 474, 481–82 (1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977), articulated the requirements of such to be as follows:

> A contract implied in fact requires a showing of the same mutual intent to contract as that required for an express contract. The fact that an instrument was not executed is not essential to consummation of the agreement. It is essential, however, that the acceptance of the offer be manifested by conduct that indicates assent to the proposed bargain. *The requirements of mutuality of intent and the lack of ambiguity in offer and acceptance are the same for an implied-in-fact contract as for an express contract; only the nature of the evidence differs.*

(footnotes omitted; emphasis supplied) (plaintiff could not recover on alleged implied-in-fact contract to exchange plaintiff's real property for government property). Therefore, in order to find an implied-in-fact contract, plaintiff must show: (1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; and (3) authority to bind the government residing in the officer whose conduct was relied upon. *Pacific Gas and Electric Co. v. United States*, 3 Cl.Ct. 329 (1983) (plaintiff's conduct in reconstructing Forest Service road for its own benefit did not constitute acceptance because plaintiff did not rely on any offer from the Forest Service). In analyzing plaintiff's factual allegations in light of these elements, the court finds

that, even taking all of plaintiff's allegations as true, it fails nevertheless to provide facts to meet all elements necessary to invoke jurisdiction.[4] First, plaintiff alleges no facts showing a mutual intent to contract. Nowhere in plaintiff's pleadings are there any facts pointing to an approach, consultation, or negotiations between Pasco and the SBA regarding the disposition of Micro's abandoned property. Plaintiff fails to provide one scintilla of evidence of a meeting of the minds between *authorized* SBA personnel and Pasco's representatives that the SBA would assume any liability for the rent of Pasco's premises. Mere allegations of co-existent concern do not establish intent to contract.

■ From all of the foregoing circumstances advanced by plaintiff, the court fails to find, in that the pleadings do not show, that the "legal equivalent of mutual consent" to contract existed between the parties regarding liability for Micro's unexpired lease term. *See Porter v. United States*, 204 Ct.Cl. 355, 365–66, 496 F.2d 583, (1974), 590–91, *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 761 (1975) (court could not infer as a fact from conduct of parties an implied-in-fact contract when no government agent was involved). Secondly, the court finds ambiguity in the facts plaintiff alleges to show offer and acceptance. Bankruptcy Code § 362 imposed a stay against both plaintiff and defendant in asserting their rights respectively as lessor and creditor. Therefore, it is not clear or established to the court that the resulting inaction on the part of the parties constituted more than mere compliance with the Bankruptcy Code. Thirdly, the pleadings are totally devoid of any allegations regarding the authority of any offi-

---

**4.** It is well established that the federal government is not liable for damages resulting from sovereign acts performed by it in its sovereign capacity. *Horowitz v. United States*, 267 U.S. 458, 461, 45 S.Ct. 344, 345, 69 L.Ed. 736 (1925). The government, acting through the SBA to implement national policies (*i.e.*, making loans to small businessmen), would incur no liability if not otherwise subject to a waiver of sovereign immunity. No enforceable implied contract would or could arise as a result of the government acting in its sovereign capacity: "It is

well-settled, however, that where the United States does not make itself a party to the contracts which implement important national policies, no express or implied contracts result between the United States and those who will ultimately perform the work." *Aetna Casualty and Surety Co. v. United States*, 228 Ct.Cl. 46, 655 F.2d 1047 (1981) (government did not sign contract with plaintiff, and there were no communications between the government and plaintiff).

cial to duly bind the government on whose conduct or representations plaintiff justifiedly relied. In fact, there is not one scintilla of evidence presented evincing communications with any identified representative of the government regarding the personalty in issue or the disposition of said abandoned property. Since plaintiff fails to identify the official it dealt with, plaintiff also fails to provide evidence of that official's ultimate authority to bind defendant. Thus, it is evident that plaintiff does not meet any part of its burden of showing that an implied-in-fact contract was made. *See Shaw v. United States,* 8 Cl.Ct. 796, 799 (1985) (implied-in-fact contract claim failed since no facts alleged evincing a promise, representation, or statement by any authorized government official).

In seeking to establish an implied-in-fact contract, plaintiff's reliance on *Prudential Insurance Co. of America v. United States,* 7 Cl.Ct. 710 (1985), is misplaced. There the government *conceded liability for the fair rental value* of the leased premises when it held over for 10 months after the lease it signed expired. Moreover, the issue in *Prudential* was whether plaintiff could recover on its claim for *damages due to its inability to relet* the premises for the 10 months that the government remained in possession. The court denied plaintiff's claim and refused to imply a clause into the lease warranting the lessee's vacation of the premises at the expiration of the lease term. *Id.* at 717. The court found that plaintiff set forth no facts, either from the terms of the lease or from the circumstances surrounding the execution of the lease, that showed a mutual intent to covenant that the government would vacate after the termination of the lease or pay damages. *Id.* at 714. Since the court denied the plaintiff's claim in *Prudential* due to failure to show facts supporting mutuality of intent, *Prudential* obviously offers plaintiff in the case at bar no comfort. In fact, the cited case supports defendant's motion to dismiss for failure to allege jurisdictional facts.

■ Further, the court finds that no implied-in-fact contract exists in this case on which to apply the doctrine of equitable estoppel, and this is true regardless of plaintiff's argument that defendant should be estopped from denying said contract. Contrary to Pasco's position, the SBA is not estopped to deny the existence of a contract because it has accepted benefits from an unrelated party. *Pacific Gas & Electric,* 3 Cl.Ct. at 341. The test plaintiff must meet to recover on the basis of benefits received under an implied-in-fact contract is that it must present facts that show not only that defendant benefited but that the acceptance of said benefits was expressly authorized or implicitly ratified by defendant's officials with the authority to bind defendant. *Id.* Quite simply, plaintiff's facts as alleged give no evidence of authorized or ratified acceptance of benefits from plaintiff.

■ Finally, even assuming arguendo the presence of an implied-in-fact contract, plaintiff's proffered facts do not meet the requisite standard necessary to trigger the doctrine of equitable estoppel. The elements thereof are: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the asserter of estoppel must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. *See Glopak v. United States,* 12 Cl.Ct. 96 (1987) (court denied plaintiff's claim that government should be estopped from enforcing price adjustment clause). *See also United States v. Georgia-Pacific Co.,* 421 F.2d 92 (9th Cir.1970) (government estopped from enforcing contract that it had terminated). First, plaintiff has failed to present any facts showing that defendant knew of Micro's intent to abandon its property on plaintiff's premises. Secondly, there is no showing of facts supporting either defendant's intent or conduct to induce plaintiff's reliance. Thirdly, plaintiff was not ignorant of the true facts. As *the* party notified by Micro of its intent to abandon the lease and the property, it is evident that plaintiff had knowledge of the

operative facts as to which defendant did not. Finally, and as previously concluded, plaintiff failed to allege *any* facts showing conduct of an authorized government agent on which it relied to its detriment. Thus, the claim that defendant should be estopped from denying the existence of an implied-in-fact contract must fail.

### V. *Conclusion*

For the reasons expressed above, the court hereby grants defendant's motion to dismiss plaintiff's claim for lack of subject matter jurisdiction and for failing to state a claim upon which this court can grant relief. The Clerk shall enter judgment accordingly and dismiss the complaint.

IT IS SO ORDERED.