**TRANSAMERICA INSURANCE COMPANY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 93–35C.

United States Court of Federal Claims.

July 7, 1994.

---

Adam C. Harrison, Baltimore, MD, for plaintiff; Robert M. Wright and Gerard P. Sunderland, of counsel.

Jeffrey J. Bernstein, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, with whom were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, and Mary Mitchelson, Deputy Director, Washington, DC, for defendant.

## OPINION

MARGOLIS, Judge.

This contract case is before the court on defendant's motion to dismiss. Plaintiff, a performance bond surety, seeks to recover funds withheld by defendant as liquidated damages when a construction contractor defaulted. Plaintiff argues that the court may adjudicate its claims under the Tucker Act, 28 U.S.C. § 1491, and the Contract Disputes Act, 41 U.S.C. §§ 601 et seq., through the doctrine of equitable subrogation. Defendant counters that equitable subrogation does not apply to this case because plaintiff did not complete the construction contract. Moreover, defendant asserts that the court may not grant the relief plaintiff seeks because the funds are not contract retainage. After hearing oral argument, and after carefully reviewing the record, the court denies defendant's motion to dismiss.

## FACTS

■ Defendant, the United States, acting through the Department of the Navy ("Navy"), contracted with The Hirt Company ("Hirt") to build a diving service building at the David Taylor Research Center in Carderock, Maryland. The Navy and Hirt entered into Contract No. N62477–88–C–9353 on October 18, 1988. The contract price was $174,500, with a modified completion date of June 1, 1989. The contract and the Miller Act, 40 U.S.C. § 270a, required Hirt to secure both performance and payment bonds.[1] On November 3, 1988, Hirt purchased a $174,500 performance bond and a $87,250 payment bond from plaintiff, Transamerica Insurance Company ("Transamerica").

■ On February 6, 1990, Transamerica notified the Navy that Hirt, by its letter to the Navy on December 1, 1989, was voluntarily defaulting on its obligations under the contract. Two weeks later, defendant terminated for default Hirt's rights to proceed under the contract and retained the remaining $71,093.92 of the contract price. Hirt's default triggered plaintiff's obligations under the performance and payment bonds. Pursuant to the performance bond, Transamerica tendered a completion contractor to defendant.[2] Defendant hired the completion contractor on October 24, 1990. Defendant paid the completion contractor $44,493 from the remaining $71,093.92 of Hirt's contract balance when the project was finished on January 8, 1991. Plaintiff claims it paid the completion contractor $14,350.29 and suffered losses in excess of $20,000 in meeting its obligations under the payment bond.

On January 22, 1992, defendant issued a final decision assessing liquidated damages against Hirt in the amount of $43,200 relating to its default termination. Defendant calculated that Hirt was liable for a total delay of 432 days, with the contract setting liquidated damages at $100 per day. The final decision noted that defendant had already retained $26,600.92 of the contract price as liquidated damages and requested that Hirt pay the Navy $16,599.08. Hirt did not challenge the final decision. This lawsuit followed when Transamerica filed its complaint on January 21, 1993.

## DISCUSSION

■ Defendant moves, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims, to dismiss Transamerica's complaint for lack of subject matter jurisdiction. As the plaintiff, Transamerica bears the burden of establishing that

---

1. A performance bond protects the government by obligating the surety to cover any extra costs the government may incur to complete a project if the contractor defaults. In contrast, a payment bond protects the subcontractors and materialmen by obligating the surety to cover any of their fees left unpaid in the event of a contractor's default. *See generally* Richard E. Speidel, *"Stakeholder" Payments Under Federal Construction Contracts: Payment Bond Surety vs. Assignee,* 47 Va.L.Rev. 640, 641–45 (1961); Note, *Reconsideration of Subrogative Rights of the Miller*

*Act Payment Bond Surety,* 71 Yale L.J. 1274, 1274–77 (1962).

2. Generally, a performance bond surety may discharge its obligations in various ways, including: executing a formal takeover agreement with the United States and contracting for its completion; funding the defaulting contractor through completion; or covering the government's costs beyond the contract price to complete the project. *See Aetna Casualty and Surety Co. v. United States,* 845 F.2d 971, 975 (Fed.Cir.1988).

the court may properly adjudicate this case. *Pasco Enterprises v. United States*, 13 Cl.Ct. 302, 305 (1987). In considering defendant's motion, the court must review the facts in a light most favorable to Transamerica. *Id.* at 303.

■ The Court of Federal Claims is a court of special jurisdiction. *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976). The court may not adjudicate claims against the United States unless Congress expressly grants such authority. *Id.* The principal scope of the court's jurisdiction includes "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). The court may also adjudicate challenges to a contracting officer's final decision under the Contract Disputes Act. 41 U.S.C. §§ 601 *et seq.*

Transamerica cannot maintain an action against defendant based on either an express or implied contract. Transamerica concedes that it did not contract with defendant by executing a takeover agreement. Moreover, no implied contract between plaintiff and defendant was created when Transamerica executed the performance and payment bonds for Hirt. *See Fidelity & Deposit Co. v. United States*, 14 Cl.Ct. 421, 423 (1988).

■ The Court of Federal Claims may, however, adjudicate plaintiff's claims under the Tucker Act through the doctrine of equitable subrogation. The doctrine of equitable subrogation allows a performance bond surety to sue the United States in the Court of Federal Claims. *See, e.g., Aetna Casualty and Surety Co. v. United States*, 845 F.2d 971, 974 (Fed.Cir.1988) (citing *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 138, 83 S.Ct. 232, 235–36, 9 L.Ed.2d 190 (1962)); *Balboa Ins. Co. v. United States*, 775 F.2d 1158, 1161 (Fed.Cir.1985) (citing *Prairie State Bank v. United States*, 164 U.S. 227, 231, 17 S.Ct. 142, 144, 41 L.Ed. 412 (1896)); *Westech Corp. v. United States*, 20 Cl.Ct. 745, 749 (1990). A performance bond surety's remedy in this court "is limited to recovery from a fund held by the government ... pursuant to [a] construction contract." *Universal Surety Co. v. United States*, 10 Cl.Ct. 794, 797 (1986); *see also Westech Corp.*, 20 Cl.Ct. at 749.

■ Defendant argues that plaintiff may not invoke equitable subrogation as a jurisdictional basis because it did not complete the construction work at the David Taylor Research Center. According to defendant, "only a surety who undertakes the responsibility of overseeing completion of a contract of a defaulting Government contractor, will be equitably subrogated to the Government's right to contract retainages." Defendant's Motion to Dismiss at 12. Defendant contends that courts treat completing sureties more favorably than non-completing sureties because they confer a greater benefit on the government. *Id.* at 10–12. This reasoning is not persuasive.

■ A performance bond surety may invoke the doctrine of equitable subrogation even if it does not complete the underlying contract. *Aetna Casualty and Surety Co. v. United States*, 845 F.2d 971 (Fed.Cir.1988). In that case, the plaintiff-surety did not oversee contract completion. Rather, the plaintiff-surety facilitated completion of the contract by funding operations relating to the contract and advising the government and defaulting contractor. *Id.* at 973. The Federal Circuit squarely addressed and rejected the government's argument that a performance bond surety "must assume the primary responsibility for the completion of the work" in order to come within the scope of equitable subrogation. *Id.* at 974–75. In light of *Aetna Casualty*, the court finds, as a matter of law, that Transamerica may sue defendant. Transamerica alleges facts sufficient to show a cause of action under the Tucker Act through equitable subrogation when its complaint states: "Pursuant to its obligations under the Bonds, Transamerica tendered a completion contractor to the United States.... paid the completion contractor $14,350.29, [and] suffered other loss ... in excess of $20,000." Complaint ¶ 12. The actual extent to which Transamerica facilitated contract completion will determine whether plaintiff succeeds on its claims.

■ Alternatively, defendant argues that plaintiff's action must be dismissed because Transamerica seeks relief which this court cannot grant. Defendant asserts that the funds at issue in this case do not qualify as "contract retainage," the only relief a plaintiff may pursue under the doctrine of equitable subrogation. Defendant contends there is no contract retainage here because the government properly reduced the contract price pursuant to the liquidated damages provision of the contract. Further, defendant urges the court to treat Transamerica's suit as a challenge to the propriety of the contracting officer's liquidated damages calculation, rather than a claim to contract retainage. This argument is also without merit.

■ The court may review the government's assessment of liquidated damages and, if the facts so justify, award Transamerica the funds at issue. Under the doctrine of equitable subrogation, "contract retainage" is determined as soon the contractor defaults. *See Balboa Ins. Co.*, 775 F.2d 1158. In *Balboa*, the plaintiff-surety anticipated the contractor's default and notified the government. *Id.* at 1160. Nevertheless, the government disbursed a remaining progress payment to the contractor. The plaintiff-surety sought to recover that progress payment as "contract retainage" through equitable subrogation. The plaintiff-surety argued that it could challenge the propriety of the defendant's action and recover the disbursed funds because it notified the government of the contractor's imminent default before the disbursement. The Federal Circuit agreed, holding that "the United States becomes a stakeholder with a duty of acting with reasoned discretion when a Miller Act surety alleges that the contractor has breached the contract by defaulting under one of the bonds." *Id.* at 1162. Similarly, Transamerica may assert a claim to the contract balance as it existed when Transamerica notified defendant on February 6, 1990 of Hirt's default. In so doing, Transamerica may challenge defendant's management of those funds, including its decision to reduce them pursuant to a liquidated damages claim.

## CONCLUSION

The court denies defendant's motion to dismiss Transamerica's complaint. Transamerica has alleged sufficient facts to show that the court may adjudicate its claims through equitable subrogation.