**TRANSAMERICA INSURANCE COMPANY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 90–280C.**

United States Court of Federal Claims.

July 27, 1994.

John V. Burch, Atlanta, GA, with whom was Gregory R. Veal, for plaintiff.

Richard E. Rice, Civ. Div., U.S. Dept. of Justice, Washington, DC, with whom were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Jeanne E. Davidson, Asst. Director, and W. Reeves Lewis, Corps of Engineers, U.S. Dept. of the Army, of counsel, for defendant.

## OPINION

MARGOLIS, Judge.

This contracts case is before the court on defendant's motion to dismiss or, in the alternative, for summary judgment. Defendant argues that the court lacks jurisdiction to consider plaintiff's claim because the United States has not waived sovereign immunity

for this type of equitable subrogation claim and that the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601 *et seq.*, bars the equitable subrogation claim of a surety that executed a takeover agreement and failed to submit a properly certified claim to the contracting officer. Defendant further argues that plaintiff executed a release as a condition of final payment on a contract related to this case which bars its claim. Plaintiff argues the court has jurisdiction to hear its claim under the Tucker Act, 28 U.S.C. § 1491. Plaintiff also argues that its subrogation rights derive solely from equity, are independent of any contractual relationship between the parties, and are not governed by the provisions of the CDA or affected by its release of certain contract claims.

After careful consideration of the record and after hearing oral argument, the court denies defendant's motion to dismiss, or in the alternative, for summary judgment.

## FACTS

Plaintiff, Transamerica Insurance Company ("Transamerica"), is a surety bond company which issued payment and performance bonds on behalf of Bodenhamer Building Corporation ("Bodenhamer") in connection with two construction contracts. Bodenhamer contracted with defendant, the United States acting through the U.S. Army Corps of Engineers, to construct the Commissary Warehouse and Class VI Store at Fort Bragg, North Carolina under Contract No. DACA–21–85–C–0104 ("commissary contract"), and to construct the Bowley Elementary school, also at Fort Bragg, under Contract No. DACA–21–87–C–0054 ("school contract").

Bodenhamer defaulted on the school contract and plaintiff obtained a replacement contractor for the school project pursuant to its performance bond obligations. Transamerica alleges that it incurred losses under the performance bond in excess of $1,000,000. Bodenhamer completed the commissary project and filed an equitable adjustment claim exceeding $500,000. Transamerica, having closely monitored Bodenhamer's equitable adjustment claim, alleges it notified the government in writing that it sought funds

through the doctrine of equitable subrogation owed Bodenhamer pursuant to a settlement reached on the equitable adjustment claim. However, the government disbursed more than $600,000 to Bodenhamer.

In *Transamerica Ins. Co. v. United States*, 22 Cl.Ct. 674 (1991), this court relied on *Dependable Ins. Co. v. United States*, 846 F.2d 65 (Fed.Cir.1988) to dismiss plaintiff's claim because Transamerica sought funds retained on a contract other than that which generated its claim. On appeal, the Court of Appeals for the Federal Circuit reversed, holding that if a surety and a defaulting contractor are the only claimants to a fund retained by the government on an unrelated contract, the surety may look to the entire fund to satisfy an equitable subrogation claim and is not limited to retainage on the contract generating the claim. *Transamerica Ins. Co. v. United States*, 989 F.2d 1188 (Fed.Cir.1993) (*citing District of Columbia v. Aetna Ins. Co.*, 462 A.2d 428 (D.C.Ct.App. 1983)).

## DISCUSSION

### *Jurisdiction*

The Court of Federal Claims is a court of special jurisdiction. Absent congressional consent to adjudicate a claim against the United States, this court lacks authority to grant relief. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). The Tucker Act does not create a substantive right of recovery against the United States, but rather confers jurisdiction upon the court when a substantive right exists. *Id.* at 398, 96 S.Ct. at 953. Therefore, a claimant must point to a contract or other legal authority which creates a substantive right to recover money damages. *Westech Corp. v. United States*, 20 Cl.Ct. 745, 748 (1990).

Specifically, the Tucker Act confers "jurisdiction to render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491. Jurisdiction to adjudicate equitable subrogation claims is derived from

this court's well-recognized authority to utilize equitable doctrines as a legal basis for exercising its monetary jurisdiction.

Equitable doctrines can be employed incidentally to this court's general monetary jurisdiction either as equitable procedures to arrive at a money judgment, *or as substantive principles on which to base the award of a money judgment....* This court has always construed the 1948 version of the Tucker Act as continuing the previously established use of equitable doctrines. Often, the court has awarded (or denied) a money judgment based upon an equitable theory, without even discussing its jurisdiction. This continued assumption that we can properly use equitable theories in passing upon suits for monetary awards is grounded firmly on the Tucker Act's history, on unquestioned Supreme Court cases and on Court of Claims decisions; we reaffirm both the practice and the principle.

*Pauley Petroleum Inc. v. United States,* 219 Ct.Cl. 24, 38–40, *cert. denied,* 444 U.S. 898, 100 S.Ct. 206, 62 L.Ed.2d 133 (1979) (emphasis added) (footnote and citations omitted); *Balboa Ins. Co. v. United States,* 775 F.2d 1158, 1161 (Fed.Cir.1985) ("the traditional means of asserting a surety's claim is under the equitable doctrine of subrogation").

▪ The government does not challenge this court's jurisdiction to hear equitable subrogation claims generally. Instead, defendant argues that "[t]he Tucker Act simply does not contain an 'unequivocal' waiver of sovereign immunity with respect to the type of equitable subrogation claim asserted by Transamerica in this case." Defendant's Motion at 15–16. The court rejects defendant's argument. The Federal Circuit in *Transamerica* did not articulate a new type of equitable subrogation claim. That court's decision was merely a natural consequence of the doctrine of equitable subrogation. Where a performance bond surety and a defaulting contractor lay claim to the same fund, the equities favor the surety's claim

even if the fund includes retainage on a contract other than that which generated the claim. *See Transamerica,* 989 F.2d at 1191–95.

▪ Defendant also argues that the CDA applies to plaintiff's equitable subrogation claim because plaintiff executed a takeover agreement when Bodenhamer defaulted on the school contract. The takeover agreement incorporated the standard disputes clause of the school contract which states that the CDA is applicable and that "all disputes arising under or relating to" the school contract shall be resolved under the disputes clause. *See* Surety Takeover Agreement at 2–3, ¶ 3; Federal Acquisition Regulation ("FAR") 52.233–1(b), Disputes (April 1984). Nothing in the record indicates that Transamerica submitted a certified equitable subrogation claim to the contracting officer ("CO"). Defendant argues that the CDA bars plaintiff's equitable subrogation claim because it is related to the school contract and Transamerica did not satisfy the jurisdictional prerequisite contained in sections 605(a) and 605(c)(1) by submitting a certified claim to the CO.

The issue of whether the CDA applies to an equitable subrogation claim of a performance bond surety that executes a takeover agreement is a question of first impression before the court. The requirements of sections 605(a) and 605(c)(1) apply to *contract claims* of a surety that executes a takeover agreement following contractor default, *see, e.g., Transamerica Ins. Co. v. United States,* 6 Cl.Ct. 367, 370 (1984), because a surety becomes a contractor subject to the CDA by executing such an agreement with the government. *Westech Corp.,* 20 Cl.Ct. at 749; 41 U.S.C. § 601(4). However, the defendant has neither cited nor has the court found any binding authority which establishes that the CDA or an underlying contract's disputes clause applies to the *equitable subrogation claim* of a performance bond surety that executes a takeover agreement with the government.[1]

---

1. Several Boards of Contract Appeals decisions hold that the CDA applies to equitable subrogation claims. *Rodgers Constr., Inc.,* 92–1 BCA (CCH) ¶ 24,503 (IBCA 1991), at 122,296–99; *Indiana Lumbermen's Mut. Ins. Co., Inc.,* 88–3 BCA (CCH) ¶ 20,865 (VABCA 1988); *Peerless Ins. Co.,* 88–2 BCA (CCH) ¶ 20,730 (ASBCA 1988), at 104,739–42. These decisions are not binding, and are not persuasive because they fail to consider important distinctions between this court's

The claim submission requirement of CDA section 605(a) applies to "[a]ll claims ... relating to a contract" and the certification mandate of section 605(c)(1) covers claims exceeding $50,000. The school contract's disputes clause, incorporated into the takeover agreement, applies to "all disputes arising under or relating to this contract." FAR 52.233–1(b), Disputes (April 1984). The disputes clause also states "[a] claim arising under a contract, unlike a claim relating to that contract, is a claim that can be resolved under a contract clause that provides for the relief sought by the claimant." *Id.* at 1(c).

■ An equitable subrogation claim is not resolved under any contract clause. The Federal Circuit described the doctrine of equitable subrogation as follows:

> Finding no persuasive reasons to the contrary, we adopt the view that "[t]he right of subrogation is not founded on contract. It is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties." *Memphis L.R.R. Co. v. Dow,* 120 U.S. 287, 301–02, 7 S.Ct. 482, 488–89, 30 L.Ed. 595 (1887); *see City Stores Co. v. Lerner Shops of District of Columbia, Inc.,* 133 U.S.App.D.C. 311, 410 F.2d 1010 (1969); G. HARRIS, A TREATISE ON THE LAW OF SUBROGATION 123–24 (1889); H. SHELDON, [LAW OF SUBROGATION] at 2, 10, 107–08 [1882].

*Transamerica,* 989 F.2d at 1192 (citing *District of Columbia,* 462 A.2d at 431). The court finds that plaintiff's right of equitable subrogation is not a claim "arising under" the takeover agreement. Therefore, the issue of CDA applicability turns on whether the equitable subrogation claim of a performance bond surety that executed a takeover agreement is a claim "relating to" that takeover agreement.[2]

By its very nature, plaintiff's claim for equitable subrogation is not related to the school contract takeover agreement. Transamerica's claim is derived from its subrogative right to step into the shoes of the government and recover proceeds withheld on a contract unrelated to the school project, which may result in recovery from the government for breach of its equitable duty to safeguard contract retainage. Although defendant correctly notes that plaintiff's equitable subrogation rights matured when it completed performance of the school contract takeover agreement, *see Fidelity and Deposit Co. v. United States,* 183 Ct.Cl. 908, 912, 393 F.2d 834 (1968) ("surety's potential rights become an actuality when it pays the obligations of its principal"), plaintiff merely discharged its obligations *under the performance bond of the defaulted contract* by completing the school project.

Further examination of Transamerica's equitable subrogation claim supports the court's finding. First, plaintiff's potential equitable subrogation rights arose upon Bodenhamer's default, prior to execution of the takeover agreement. *Id.* Further, Transamerica's "rights of subrogation relate back to the date of execution of the surety bonds." *Id.* Moreover, under the doctrine of equitable subrogation, "contract retainage" is determined at the time of the contractor's default. *See Balboa Ins. Co.,* 775 F.2d at 1163. Finally, a surety's equitable right of subroga-

---

Tucker Act jurisdiction and board jurisdiction under the CDA.

2. Defendant argues that plaintiff's claim need relate only to the underlying school contract to be within the CDA's scope. The court rejects this assertion based on the important distinction between the defaulted school contract, where Transamerica was not the contractor, and the school contract takeover agreement executed by Transamerica which incorporated the terms of the defaulted contract. Although an equitable subrogation claim is related to the underlying contract, a claim cognizable under the CDA must relate to the *takeover agreement* because a surety becomes a contractor subject to the provisions of the CDA by virtue of the takeover agreement. *Westech Corp.,* 20 Cl.Ct. at 749; 41 U.S.C. § 601(4). Further, for purposes of the CDA the FAR defines "claim" as follows: " '[c]laim,' as used in this clause, means a written demand ... relating to *this* contract." FAR 52.233–1(c), Disputes (April 1984) (emphasis added); *see Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 192, 645 F.2d 966 (1981). The FAR disputes clause was incorporated into the takeover agreement which Transamerica executed after Bodenhamer's default on the school contract. Therefore, plaintiff's claim must relate to the takeover agreement *qua* takeover agreement, even if the terms and conditions of the underlying contract are incorporated therein.

tion exists whether it executes a takeover agreement or performs under its bonds in some other fashion. *See Transamerica v. United States,* 31 Fed.Cl. 532, 535 (1994). The existence of potential subrogation rights and contract retainage at the time of the contractor's default, the subsequent maturing of those rights whether by takeover agreement or in some other fashion, and the fact that a surety's rights relate back to the date of execution of the bonds, preclude the court from finding that Transamerica's claim relates to the takeover agreement. The court finds that plaintiff's equitable subrogation claim relates to the circumstances and duties of the defaulted school contract and the performance bond, rather than the takeover agreement executed by Transamerica.

Plaintiff's action seeking recovery of funds withheld on an underlying contract other than that which generated the claim only reinforces this court's conclusion. As discussed, *supra,* the Federal Circuit's decision is a natural consequence of the doctrine of equitable subrogation. *See Transamerica,* 989 F.2d at 1191–95. Plaintiff may look to funds retained by the government on the commissary contract precisely because its claim is not strictly related to the takeover agreement. Instead, Transamerica's right of subrogation springs from neither the takeover agreement nor statutory law, but from the duties and circumstances of the underlying contract, performance under the bonds, and "judicial commitment to providing fairness and equity among competing claimants." *Id.* at 1194. Further, the fact that Transamerica notified the government of its intent to pursue an equitable subrogation claim after the execution of the takeover agreement does not alter the court's conclusion. Notification relates to the time the government is charged with equitable duties as a stakeholder of retained funds rather than to the existence of a surety's equitable subrogation rights. *Balboa Ins. Co.,* 775 F.2d at 1162.

The court concludes that neither execution nor performance of the school contract takeover agreement transformed the equitable nature of Transamerica's subrogation rights into rights arising under or relating to that contract as contemplated by the CDA.

*Release of Claims*

Defendant argues that a general release of claims executed by plaintiff as a condition of final payment on the school contract bars recovery in this case. The release provides, in pertinent part:

> The undersigned contractor ... hereby releases the United States, it's [sic] officers, agents, and employees from any and all claims *arising under or by virtue of* said contract of any modification or change thereof except with respect to those claims, if any, listed below....

Release of Claims, February 11, 1991 (emphasis added). It is undisputed that plaintiff did not list its claim for equitable subrogation as a reserved claim on the release form.

As discussed *supra,* the equitable subrogation claim neither arises under nor is related to the contract to which plaintiff was a party—the takeover agreement. Because Transamerica's claim for equitable subrogation is not a claim "arising under or by virtue of" the takeover agreement, plaintiff did not release its equitable subrogation claim when it executed the release of claims form as a condition of final payment. The court finds as a matter of law that the release does not bar recovery in this case.

## CONCLUSION

For the foregoing reasons, the court denies defendant's motion to dismiss, or in the alternative, for summary judgment.